**Joseph A. AMORI, and Rapid-Cleave Corp., Plaintiffs,**

v.

**David W. MATTOS dba Grove Dale Mfrg. Co. et al., Defendants.**

No. 44963.

United States District Court, N. D. California.

Aug. 10, 1970.

Frank A. Neal, Naylor & Neal, San Francisco, Cal., for plaintiffs.

Chalmers Smith of Malovos, Mager & Chasuk, San Jose, Cal., for defendant Chiramonte.

Thomas H. Olson, Townsend & Townsend, San Francisco, Cal., for David W. Mattos.

FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER RULE 52, FEDERAL RULES OF CIVIL PROCEDURE

WOLLENBERG, District Judge.

I.

INTRODUCTION

In this action, plaintiffs complain of patent infringement by defendants. The claim is brought under 35 U.S.C. §§ 271 and 281, and jurisdiction clearly lies un-

der 28 U.S.C. § 1338(a). Venue is properly in this Court pursuant to 28 U.S.C. § 1400(b). Defendants counterclaim seeking a declaratory judgment of non-infringement and invalidity as to the patents involved. The matter was tried before the Court without a jury and was deemed submitted after the filing of appropriate post-trial memoranda. Having reviewed the testimony at trial, examined all relevant exhibits, and considered memoranda submitted by all parties, the Court makes the following findings of fact and conclusions of law:

## II.

### FINDINGS OF FACT

1. Plaintiff Rapid-Cleave Corporation is a corporation formed under and in accordance with the laws of the State of California. Its principal place of business is in Santa Clara, California.

2. Plaintiff Joseph A. Amori is an individual residing in San Jose, California. Mr. Amori owns and operates Rapid-Cleave Corporation.

3. Defendant Grove Dale Manufacturing and Supply Co. is a corporation formed under and in accordance with the laws of the State of California and has its principal place of business in San Jose, California.

4. Defendant David W. Mattos is an individual residing in San Jose, California; he is President of Grove Dale Manufacturing and Supply Co.

5. Defendant Louis Chiaramonte is an individual residing in San Jose, California.

6. At the outset of the controversy Plaintiffs charged Defendants with infringement of Amori 2,713,934 which was granted to Plaintiff Amori on July 26, 1955 for "FRUIT PITTING MACHINE", Amori 2,827,089 which was granted to Plaintiff Amori on March 18, 1958 for "FRUIT ORIENTING AND CUTTING SYSTEM", and Amori 2,929,424 which was granted on March 22, 1960 to Plaintiff Amori for "FRUIT ORIENTING AND CUTTING SYSTEM". Without any change in the

claims thereof, 2,827,089 was reissued as Re. 26,117 on November 29, 1966, and without any change in the single claim thereof 2,929,424 was reissued as Re. 26,111 on November 8, 1966. During trial the Court granted defendants' motion under Rule 41(b) of the Federal Rules of Civil Procedure and dismissed, with prejudice, plaintiffs' infringement claim as to patent '934. There thus remain to be adjudicated the infringement claims as to '089 and '424 and the counterclaims of invalidity as to '934, '089, and '424.

7. Plaintiff Amori has owned '934, '089–'117 and '424–'111 since the times of their issuance and has the right to sue for past and present infringement of these patents; plaintiff Rapid-Cleave is and has been the sole licensee under these patents and has proper status as a co-plaintiff in this action.

8. Claim 2 of '089 covers apricot halving machines. Both prior to and during the time of commission by the defendants of the acts herein complained of by plaintiffs as constituting infringement of claim 2 of '089 Rapid-Cleave was engaged in the business of leasing to apricot packers apricot halving machines covered by claim 2 of '089 the machines herein referred to as having been leased by Rapid-Cleave being the same machines which are referred to in Finding No. 9, *infra*, as having been leased by Rapid-Cleave. The apricot halving machines so leased by Rapid-Cleave each bore a patent number marking plate which set forth the number of the '089 patent.

9. The '424 patent in suit covers a method of pitting apricots and such other varieties of fruit as may be shaped comparably to apricots in the sense of being ovaloid in form and having three mutually perpendicular and mutually intersecting diameters or axes of varying lengths, that is, a long blossom to stem axis which resides within the plane of the suture or cleavage line of the fruit, an axis of intermediate length which also resides within the plane of the suture line, and a short axis which extends

from one cheek to the other cheek of the fruit. Both prior to and during the times of commission by the defendants of the acts herein complained of by the plaintiffs as constituting infringement of '424, Rapid-Cleave was engaged in the business of leasing to fruit packers apricot pitting machines, the operation of which was covered by the method claim of '424. The apricot pitting machines so leased by Rapid-Cleave each bore a patent number marking plate which set forth the number of the '424 patent.

10. The claims of '934, whose validity is in question by virtue of defendants' counterclaim together describe a "FRUIT PITTING MACHINE"; application for a patent on said machine was filed complete on February 12, 1952, as a "continuation in part" of another Amori application filed August 20, 1946. The 1952 application covers a machine which

"so orient[s] the fruit while it is being moved toward rotary knives that the fruit will be disposed in a plane at a right angle to its smallest or cheek to cheek diameter and will be rotated end over end in said plane * * * to bring the entire suture line of the fruit into the path of rotation of the cutting edge of a rotary knife."

The sole claim of '424 charged as having been infringed by defendants reads as follows:

"A method of pitting tri-diametral ovaloid fruit comprising bodily moving the fruit singly in spaced relation in an upwardly inclined direction while applying unequal rotational forces to the underside of the peripheral surface of such fruit at a plurality of spaced apart points only thereon, said forces acting within spaced apart vertical planes disposed parallel to said direction of movement, thereby rolling said fruit at a predetermined rate of rotation in the direction in which they are being bodily moved and orienting said fruit to constrain the suture lines thereof to remain in a vertical plane, and then cutting the fruit peripherally around the suture lines while maintaining said fruit rolling in the direction in which they are being bodily moved."

Claim 2 of '089 which is charged as having been infringed by defendants reads as follows:

"An apricot halving machine comprising means for orienting whole apricots with their sutures in a substantially vertical plane and continuously rotating them while maintaining such orientation, in combination with halving mechanism comprising a freely suspended annular knife and means for effecting slicing movement thereof in a substantially vertical plane at a location with respect to said orienting means such as to effect cutting of the meat of an oriented and rotating apricot while permitting said suspended knife to rise upon encountering the seed thereof."

11. Defendants assert that the claims of the Amori patents herein at issue are invalid for a number of reasons. One such reason is that the claims are at least in part based on subject matter disclosed to the Patent Office for the first time in the Amori application for '934, filed on February 12, 1952, which date should therefore be judged the earliest effective filing date for the patents at issue. The patents should thus be adjudged invalid under 35 U.S.C. § 102(b) since they were for inventions in public use or on sale in the United States more than one year prior to the 1952 filing date. Plaintiffs answer that the filing date for purposes of § 102(b) should be August 20, 1946, i.e. the date of Amori application No. 691,708 for a "FRUIT PITTING MACHINE, etc.". It is said that '089, '934, and '424 have their disclosure foundation in this earlier application. The Court does not reach this issue, in view of the dispositive character of its Findings of Fact #14–19, *infra*.

12. Defendants argue, as to the method claim of '424 that this claim was not expressly mentioned in the 1946 Amori filing cited above, and that the claim did not come to the attention of the Patent Office until June, 1948, i.e.

at a time more than one year after public use of the method. Plaintiffs answer that the original 1946 application constituted sufficient disclosure foundation for the method claim. The Court does not reach this issue, in view of the dispositive character of its Findings of Fact # 14–19, *infra*.

13. Defendants further allege that claim 2 of '089 should be declared invalid because the applicant deliberately deferred the grant to him of a patent containing this claim, so as to delay the eventual expiration date of the patent covering the claim. Plaintiffs answer with various explanations of the purported delay in the grant. The Court reaches neither the issue of deliberate delay nor that of the reasonableness of plaintiffs' actions, in view of the dispositive character of its Findings of Fact #14–19, *infra*.

14. The earliest possible filing date attributable to the patents at issue is August 20, 1946. See Finding of Fact #11, *supra*.

15. The Court, basing itself on the testimony of the witness Daugherty and the drawings and other documentary evidence identified and authenticated by Daugherty, finds that an onion-halving machine corresponding in all significant respects to that shown in the defendant's Exhibits G and M was installed in 1944 by the witnesses Daugherty and Magnuson in a shed in Vacaville, California, which shed was leased by Basic Vegetable Products Company. This machine successfully positioned onions with their root stem axis (the shortest axis) in a horizontal position and halved the oinions. No attempt was made to exclude onlookers from viewing the machine and the machine was paid for and purchased by Basic Vegetable Products Company. The Court finds that such machine was in public use and sale prior to August 20, 1945, in the sense intended by 35 U.S.C. 102(b) and is therefore available as prior art with respect to the Amori patents.

16. The Court, basing itself on the testimony of Daugherty and Hume, finds that an onion positioning and halving machine of the type shown in Magnuson Patent No. 2,577,086 (defendants' Exhibit Q) was constructed by the Magnuson Engineering Company and was shipped to Basic Vegetable Products Company in Vacaville during the first half of 1945. Magnuson Engineers was fully paid by Basic Vegetable Products Company for the construction of the machine, and the Court finds that the machine was on sale during the first half of 1945. This machine is therefore prior art with respect to the Amori patents in suit quite apart from the Magnuson patent itself.

17. The Court observed at trial defendant's demonstration machine (defendants' Exhibit S), and, basing itself on this demonstration as well as on the testimony of Daugherty, the Court finds that the demonstration machine employs rollers that are the same as the rollers contained in the machine sold to Basic Vegetable Products and mentioned, *supra*, in Finding of Fact #16. The Court further finds that this machine orients onions and apricots irrespective of the relative speed of the grooved roller and the plain cylindrical roller.

18. The Court also has before it printed examples of prior art with respect to the patents in suit. Such examples include:

(a) Harpold 553,649, issued January 28, 1896, for a FRUIT PITTING MACHINE;

(b) Briggs and Leach 404,517, issued June 4, 1889, for a FRUIT STONING MACHINE;

(c) Roberts 1,524,886, issued May 26, 1924, for a FRUIT CUTTER AND PITTER;

(d) Jones 1,897,431, issued February 14, 1933, for a CONVEYOR.

19. From the pertinent prior art listed above, and from the various diagrams, exhibits, and testimony herein, the Court has become well aware of the level of ordinary skill in the art of fruit pitting machines and methods at the earliest possible filing date attributable

to the patents at issue. The Court finds that the differences between the patents at issue ('934, '089, and '424) and the prior art include the use of a freely suspended annular knife, the configuration and relative speeds of the rollers, the use of unequal rotational forces, and the particular combination of known steps into single processes or claims. All these differences, including those enumerated and those not enumerated, were well within the level of ordinary skill in the art at the earliest possible date attributable to the inventions claimed by plaintiff Amori herein. The subject matter of the patents here at issue is such as would have been obvious "to a person having ordinary skill in the art to which said subject matter pertains". 35 U.S.C. § 103.

20. The Court finds that the inventions of the patents in suit, i.e. '089 and '424, have not been commercially successful. The Court notes plaintiffs' contentions that these inventions were used from 1947 to date. Although Asche testified that the fiscal years ending March 31, 1964, 1965, and 1966 were profitable ones for Rapid-Cleave Corporation, the owner and lessee of the machines making use of the inventions, there is no evidence of such profitable operation in any other year. There is evidence of substantial losses by the Corporation in that the entity was originally capitalized at $500,000, and, according to Asche, the equity account of the Corporation is now approximately $138,000. The decrease in capital is not explained and the Court can only assume, and finds as a fact, that the operations of the Corporation during the period were conducted at a net loss. The Court finds this as evidentiary of the fact that those of plaintiffs' inventions which are involved here have not fulfilled a long-felt need.

## III.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties as to both the complaint and counterclaim.

2. With respect to plaintiff Amori's patent 2,713,934, the Court has granted defendant's motion under Rule 41(b) of the Federal Rules of Civil Procedure. The infringement claim was dismissed with prejudice. The counterclaim, alleging the invalidity of '934, was not dismissed.

3. With respect to plaintiffs' claims of infringement of Amori 2,827,089 and 2,929,424, the Court finds that plaintiffs have not sustained their burden of proof, in view of the finding of the Court that the claims of these patents are invalid under 35 U.S.C. § 103.

4. The claims of '089 are invalid as being obvious in view of the prior art at the earliest possible date attributable to the filing of said claims. 35 U.S.C. § 103.

5. The method claim of '424 is invalid as being obvious in view of the prior art at the earliest possible date attributable to the filing of said claims, 35 U.S.C. § 103.

6. The claims of '934 are invalid in that none of them defines anything that was not obvious in view of the prior art considered as of the earliest possible filing date attributable to the filing of '934. 35 U.S.C. § 103.

7. The commercial success, or lack thereof, of Rapid-Cleave Corporation is of but secondary importance. The Court has found evidence of lack of success, which is relative to the company's not having fulfilled a long-felt need in the industry. This in turn is some indication of the state of the prior art, or of the "obviousness" of the claimed invention. Proler Steel Corp. Inc. v. Luria Bros. & Co., et al., 417 F.2d 272 (9 Cir., 1969); Jeddeloh Bros. Sweed Mills, Inc. v. Coe Mfg. Co., et al., 375 F. 2d 85 (9 Cir., 1967); Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp., 287 F.2d 228 (9 Cir., 1961).

8. With regard to the printed prior art referred to *supra*, the Court has not found it necessary to decide whether prior art references not cited by the

Patent Office are more or less pertinent than those cited. If the uncited references are pertinent, they may dissipate, or overthrow, the general presumption of validity enjoyed by claims for which the Patent Office has allowed a patent. Jaybee, etc., cit. *supra*, at 229; Monroe Auto Equipment Co. v. Superior Industries, Inc., 332 F.2d 473 (9 Cir., 1964).

9. The Court has treated the process claims herein to the same tests of patentability as any other patent. Proler Steel, etc., cit. *supra*.

### IV.

The above shall constitute findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure. Defendants shall prepare a form of judgment in accord with said findings, the same to be approved by the Court and filed in accordance with Rule 58.