**Rein J. GROEN and William A. Rice, Appellants,**

v.

**GENERAL FOODS CORPORATION, Appellee.**

No. 22059.

United States Court of Appeals Ninth Circuit.

Oct. 4, 1968.

---

Charles A. Zeller (argued) Stockton, Cal., for appellants.

James M. Naylor (argued) of Naylor & Neal, San Francisco, Cal., for appellee.

Before ELY and CARTER, Circuit Judges, and SMITH, District Judge.*

ELY, Circuit Judge:

The appellants, plaintiffs in the court below, sought relief for alleged infringement of their Letters Patent Number 2,950,203. Several alleged infringers were originally joined as defendants, but the appellants dismissed their suit

---

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

against all except General Foods Corporation, the present appellee.[1]

The District Court granted the appellee's motion for summary judgment, holding the patent in suit to be invalid and not reaching the claim of infringement. This appeal followed.

The scope of the patent, entitled "Process of Quick-Freezing Raw Onions," is defined in a single, briefly-stated claim which reads as follows:

"The process of quick-freezing raw onions which comprises sorting the onions, peeling and trimming the onions to remove unedible and undesirable portions thereof, washing the peeled and trimmed onions, cutting the onions into pieces, carrying the onion pieces while unconfined through a freezing zone and effecting an individual freezing operation on each onion piece at least as cold as substantially zero degrees F., and then packaging the onion pieces, the entire process being carried out at substantially ambient atmospheric temperatures."

In presenting their appeal, the appellants first contend, in effect, that it is never proper to dispose of a suit alleging patent infringement by summary judgment. Their advocacy of this broad proposition is based primarily upon two statements made by a Massachusetts district judge in two cases decided by him. See Baker v. First National Stores, 64 F. Supp. 979 (D.C.Mass.1946); American Optical Co. v. New Jersey Optical Co., 58 F.Supp. 601 (D.C.Mass.1944). In Baker, the district judge made a general statement that "patent validity is an issue not rightly disposed of by summary judgment," 64 F.Supp. at 980, and in American Optical, he remarked: "Such an issue is not rightly disposed of by summary judgment." 58 F.Supp. at 605. In context, the last quoted remark followed a preceding sentence referring to "the usual infringement case." While

---

1. The appeal came to us under the style of Groen and Rice, Appellants, v. Lustig Food Corporation, et al., Appellees.

summary judgment may be inappropriate in the "usual infringement" case, it cannot be that such disposition is always inappropriate, and our court has recognized the propriety of this remedy in particular circumstances. Rankin v. King, 272 F.2d 254 (9th Cir. 1959). If it may be clearly seen from an analysis of the relevant facts properly presented in support of, and in opposition to, a motion for summary judgment that no genuine issue of fact exists, it is the court's duty to terminate the controversy without delay. This serves the interest of the court, as well as the legitimate interests of the parties.

■ Our review of the material before the District Court in this case convinces us that the judgment must be affirmed. Despite all favorable intendments which might be reasonably resolved in favor of appellants' position, no genuine issue of fact existed. Indeed, we cannot, in the light of the prior art, see a basis, or understand any supposed basis, for the issuance of the patent.

The file wrapper discloses that the Patent Office was not unaware, at least for a time, of the frailties of the claim of invention. In presenting their application, the appellants first emphasized their claim to have "discovered" that "raw onions can be quick frozen satisfactorily without a blanching step, contrary to the belief in industry." In their argument to the Patent Office, they characterized this quoted portion of their statement of objects as their "principal discovery." Thereafter, the patentees themselves called to the attention of the Examiner a treatise, copyrighted over ten years before the issuance of the patent, which contained a discussion of the process of freezing onions without their having been subjected to blanching. The applicants then transferred their emphasis to the alleged "advantageous teaching of individual freezing of each piece of the onion as duly brought out in the newly presented claim 9." It should be noted here that three claims apparently sought upon the basis of descriptions of the intended products as "diced onions,"

"onion rings," and "whole peeled onions," respectively, had been previously rejected. The Patent Examiner wrote:

"Claims 1–4, drawn to the product, are rejected as unpatentable over any of the onions, sliced or otherwise, of the prior art whether such onions be frozen or unfrozen."

It is unnecessary to review, in detail, the relevant prior art which was considered by the Patent Office and that which was properly presented to the District Court by affidavit. Suffice it to say that it was shown, without question, that every step in the patented freezing process was old in the art and well known. The general process of quick freezing vegetables was shown to the District Court to have been well known to the art.

■ Turning attention back to the claim involved here, quoted in the beginning, five of the six recited steps were "sorting," "peeling and trimming," "washing," "cutting into pieces," and "packaging." It was admitted, as it would clearly have had to be, that these steps were necessarily customary in the old process of freezing vegetables. The application of "an individual freezing operation on each onion piece" required no originality in the light of the prior art of freezing certain vegetables, such as peas and beans, individually. The patentees cannot properly claim novelty because their process was to be applied to onions, as distinguished from other vegetables. The Supreme Court, nearly a century ago, invalidated a patent describing a process for the preservation of fish and meat and remarked:

"The answer is, that this was simply the application by the patentee of an old process to a new subject, without any exercise of the inventive faculty, and without the development of any idea which can be deemed new or original in the sense of the patent law. The thing was within the circle of what was well known before, and belonged to the public. No one could lawfully appropriate it to himself, and exclude others from using it in any

usual way for any purpose to which it may be desired to apply it.

"This is fatal to the patent."

Brown v. Piper, 91 U.S. 37, 41, 23 L.Ed. 200 (1875).

■ The last phrase of the patent's claim is "the entire process being carried out at substantially ambient atmospheric temperatures." Apparently attempting to impress required definiteness upon "ambient atmospheric temperatures" (see 35 U.S.C. § 112), the specification of the patent recites: "Throughout the entire process, the temperature of the raw onions is maintained at ambient atmospheric temperatures or lower so that no undesirable effects of heating are present in the flesh of the onions." And the appellants, in their opening brief in our court, supply a more specific definition, writing: "(4) at substantially ambient temperatures, *i. e., without being subjected to any heat or blanching step*." (Emphasis added.) We have already seen that the patentees, when met in the Patent Office with the existence of the prior art concerning the omitting of a blanching procedure, abandoned their claim in that regard. They cannot revert to it here. If the claim in connection with the temperature is not related to the elimination of the blanching operation, then it is so ambiguous that it should not operate effectively to thwart or obstruct legitimate competition in the field of vegetable processing. See Vitamin Technologists, Inc. v. Wisconsin Alumni Research Foundation, 146 F.2d 941 (9th Cir. 1944). There we held that certain patent claims describing the purpose of exposure as "for a period sufficient to effect antirachitic activation but so limited as to avoid subsequent substantial injury to the antirachitic principle," was "too vague and uncertain a description of the process to 'inform the public * * * of the limits of the monopoly asserted.'" 146 F.2d at 950.

■ In their reply brief the appellants rely principally upon the alleged inventive concept involved in the combination of steps set forth in the claim.[2] Our opinion as to this is that if the combination of old steps was not already actually known, it was such a simple combination that it would have been obvious to one possessing ordinary skill in the art. "[T]he subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103. The Supreme Court has admonished:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950). See also Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); M.O.S. Corp. v. John I. Haas Co., 375 F.2d 614 (9th Cir. 1967).

The patent in suit is invalid. The absence of any issue of fact such as to require plenary consideration was demonstrated, and the judgment is

Affirmed.

---

**2.** It is also urged in the reply brief that the patent should be "presumed valid" under 35 U.S.C. § 282. The presumption is of no effect when it is wholly dissipated by rebutting considerations.