**PROLER STEEL CORPORATION, INC.,**
**Appellant,**

**v.**

**LURIA BROTHERS & CO., Inc., et al.,**
**Appellees.**

**Nos. 22495, 22495–A.**

United States Court of Appeals
Ninth Circuit.

Sept. 25, 1969.

As Modified on Denial of Rehearings
Oct. 31, 1969.

John L. McConn, Jr. (argued), of Butler, Binion, Rice, Cook & Knapp, Houston, Tex., Harris, Kiech, Russell & Kern, Donald C. Russell, Los Angeles, Cal., for appellant.

Eben M. Graves (argued), and Frederick C. Carver, of Brumbaugh, Free, Graves & Donohue, New York City, Mc-Cutchen, Black, Verleger & Shea, Max K. Jamison and Joseph R. Austin, Los Angeles, Cal., for appellee.

Before DUNIWAY and CARTER, Circuit Judges, and CROCKER*, District Judge.

DUNIWAY, Circuit Judge:

Proler Steel Corporation, Inc., plaintiff, appeals from a summary judgment for defendants in a patent infringement suit. The patent is the Proler reissue patent, Re. 25,034. Claim 9 is the only claim that is involved. It is conceded that defendants do not infringe claims 1 through 8 or claim 10. The trial court held that claim 9 is invalid on a number of grounds, and that defendants do not infringe it, assuming that it is valid. We hold that claim 9 is invalid as a matter of law, for want of invention, and we therefore do not pass upon any of the other questions presented.

On this appeal, plaintiff urges that it was error to grant summary judgment because there are genuine issues of material fact, so that there must be a trial. It does not say that on this record, claim 9 of Re. 25,034 must be found valid as a matter of law.

1. *Summary judgment in a patent case.*

■ The propriety of granting summary judgment depends upon whether "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. It is well settled, in this and other circuits, that summary judgment, holding a patent claim invalid, is proper if the foregoing requirements are met. We cite only cases decided by this court. Groen v. General Foods Corp., 9 Cir., 1968, 402 F.2d 708, 709–710; Barofsky v. General Elec. Corp., 9 Cir., 1968, 396 F.2d 340; Henderson v. A. C. Spark Plug Div. of General Motors Corp., 9 Cir., 1966, 366 F.2d 389, 393–394; Walker v. General Motors Corp., 9 Cir., 1966, 362 F.2d 56, 59–60; Rankin v. King, 9 Cir., 1959, 272 F.2d 254, 258. And *see* Super

---

\* Honorable M. D. Crocker, United States District Judge, Eastern District of California, sitting by designation.

Mold Corp. v. Clapp's Equip. Div. Inc., 9 Cir., 1968, 397 F.2d 932; Fromberg, Inc. v. Gross Mfg. Co., 9 Cir., 1964, 328 F.2d 803; Engelhard Industries, Inc. v. Research Instrumental Corp., 9 Cir., 1963, 324 F.2d 347; Hovlid v. Asari, 9 Cir., 1962, 305 F.2d 747. *Cf.* Bentley v. Sunset House Distrib. Corp., 9 Cir., 1966, 359 F.2d 140. As is pointed out in some of the foregoing cases, it is not error to grant summary judgment even though there be some issues of fact presented in the affidavits or other evidence before the court. The issues must be "of *material* fact"; if they are not, summary judgment is proper.

## 2. *The patent claim in suit.*

Claim 9 of Re. 25,034, reads as follows:

"9. Process of refining a raw ferrous bearing scrap material comprising [1.] shredding the raw material, [2.] separating the more ferrous bearing shredded material from the less ferrous bearing shredded material, and [3.] individually compacting and balling up the pieces of the more ferrous bearing shredded material to densify it while maintaining the individuality of the separate pieces, whereby a fluent mass is obtained."

(We have inserted numbers in brackets for ready reference to the three steps involved in the process.)

This is a claim to a process, not to the product of the process, *i. e.,* the "fluent mass" of refined ferrous scrap. Re. 25,034 is an August 29, 1961 reissue of patent No. 2,943,930, awarded to Sam Proler on July 5, 1960, pursuant to an application first filed August 12, 1957. The reissue added claims 9 and 10 to the original patent; it makes no changes whatever in the drawings and specifications.

The purposes of the invention are described in the patent as follows (in part):

"A particular object of the invention is to convert material heretofore suitable only for making what is known in the trade as a number 2 or number 3 scrap bale into a material equivalent or superior to a number 1 bale of scrap. * * *

"A further object of the invention is to produce a flowable material, analogous to graded hard coal or rock, which can readily be handled by conventional continuous conveyors such as augers or buckets or belts, as distinguished from unitized bales requiring individual handling."

Briefly stated, the example of the process described in the specifications involves 4 steps, and consists of the following: (1) cutting and shredding worn out whole automobiles, stoves, refrigerators and other things made principally out of steel, in a hammer mill, thereby reducing the material to pieces that will pass through grates having openings with dimensions from 6" x 10" up to a maximum of 12", (2) separating the nonferrous material from the ferrous by means of a magnetic separator, (3) roasting the separated ferrous material at temperatures from 1300° to 1600° F. to burn off paper, wood, grease, oil, paint, rubber, and other combustibles, to melt off tin, lead and other nonferrous materials, and to crack off porcelain and other stonelike finishes, and (4) running the ferrous material through rollers to reduce the dimensions of the pieces, thereby achieving a density of a mass of the pieces of about 50 pounds per cubic foot. Trommelling after roasting to separate out freed nonferrous material and again after rolling, plus further magnetic separation, are described as additional but not necessary steps. The patent describes the product as follows:

"It is a high quality material suitable for charging all types of steel furnaces. By virtue of the process it is substantially free of loose and adhered nonferrous material and has a maximum piece dimension less than one foot with the possible exception of a few bars which may have escaped cutting into shorter lengths in the hammer mill and gone through its grate end-wise. It will have a density

of at least 50 pounds per cubic foot and usually more in the vicinity of 60 pounds per cubic foot or even higher * * * there is produced at low cost a refined scrap material product that is comparable or superior to number 1 scrap bales for which there is great demand as a furnace charging material. The material is suitable for either direct feed into a steel furnace, or into hot metal from a blast furnace or into a blast furnace directly along with the ore to increase the yield. It is suitable for use in all types of furnaces."

All of the claims in the original patent, except claim 2 describe the process in terms of all four of the foregoing steps. Claim 2 purports to cover the product of the four step process described in claim 1. Claim 5 adds a fifth step, a second magnetic separation after roasting. Claims 1, 3, 4 and 5 do not specify specific means. Claims 6 and 7 and, claim 10, specifically describe the use of a rolling mill to accomplish the fourth step, which is step 3 of claims 9 and 10. Claim 10 was added by the reissue, but, like claims 1 to 8, is not here involved. Claim 9, like claim 10, but unlike any of the original claims, omits the third, roasting, step.

Defendants produce a comparable product. They admittedly use the first step, shredding the raw material, which they do in a hammer mill, and the second step, separating the ferrous material from the nonferrous, which they do by means of a magnetic separator. They then take the larger pieces of the shredded ferrous materials and put them back in the hammer mill, where they are further reduced in size. There is evidence that the hammer mill shreds some pieces and compacts or balls up others. Defendants call this "recycling." Plaintiff says that it is the same as its step 3, "individually compacting and balling up the pieces of the * * * shredded material to densify it while maintaining the individuality of the separate pieces." This is the claimed infringement, a question that we do not reach.

The affidavits and other evidence disclose the background of the claimed invention. The problem of what to do with worn out automobiles and other manufactured goods which principally contain iron and steel has long plagued the processors and users of scrap iron and steel. The iron and steel in such goods would be very valuable if it could be recovered efficiently and delivered to the steel manufacturers in a form which could be used readily in the making of new steel. For decades the best known method for processing such material was to drop the articles (which contain about 20 per cent of impurities, including nonferrous metals), into a large press which mashed everything together into a solid bulky bundle or bale, known as a No. 2 bale, which often weighed more than a ton. The acceptability of these bundles declined over the years because they were cumbersome and caused breakage when dropped into steelmakers' furnaces, because steelmakers were unable to determine the impurities in the bundles, and because the bundles would not fit compactly into the furnace so that it was difficult to get a high enough weight of steel in a single charge for efficient operation of the furnace.

In 1935 Clarence M. Gregg filed a patent application which ultimately issued as patent No. 2,059,229 on a process which he thought would solve these problems. This process consisted of (1) shredding the pieces of obsolete scrap in a hammer mill, which also resulted in the loosening of the nonferrous materials, (2) separating the ferrous from the nonferrous materials by a magnetic blanket, and (3) putting the separated ferrous materials into a baling press where they were interlocked in a bale or bundle. This process was abandoned as an economic failure.

Plaintiff concedes that hammer mills, magnetic separators, and rollers are old and well known mechanical devices, the use of any of which, standing alone, is not patentable. But plaintiff emphasizes, quite correctly, that it claims no patent on any of them, or on the separate

use of any of them. What it does claim is a process consisting of three steps, each of which can be accomplished by those means, but also by other means. Nor does plaintiff claim a patent upon the product—a fluent mass of relatively small pieces of refined ferrous scrap, such that it has a density of 50 pounds or more per cubic foot, and can be handled by conventional continuous conveyors rather than in unitized bales.

Plaintiff also concedes, as it must, that Gregg anticipates the first two steps described in claim 9 of Re. 25,034. Thus we are left with a very narrow issue: does the addition of step 3 of claim 9, by whatever means accomplished, to the two Gregg steps, amount to a patentable invention? Is it patentable invention to treat the product of steps 1 and 2 by "individually compacting and balling up the pieces of the more ferrous bearing shredded material to densify it while maintaining the individuality of the separate pieces?" In this connection we note that the words "compacting" and "densify" do not refer to a compaction or densifying of the metal itself, but to a reduction in the space occupied by each piece, by flattening or more tightly crumpling it. Thus the density of a *"mass"* or aggregation of pieces is increased because there will be more metal and less air in a cubic foot of loose pieces. No expert or other testimony is needed for us to know that if an irregular shaped piece of sheet steel, partially crumpled, is compacted or balled up, it will occupy less space, so that more of such pieces can be placed in a pile or container of a given size. The amount of metal in each piece, however, will remain the same. Hence there will be more metal in a given mass of compacted or balled up pieces than there will be in the same volume of pieces that have not been so treated. Similarly, we need no testimony, expert or otherwise, to tell us that a "mass" of smaller objects will be more "fluent" and so more readily handled by "conventional continuous conveyors, such as augers or buckets or belts," than a "mass" of larger objects. (In claim 9 of the patent, as in this opinion, the word "mass" is not used in the technical sense in which physicists use it.)

As to the foregoing, there is no conflict whatever in the evidence in this case.

3. *The applicable law.*

We have no doubt that claim 9 describes a process. And a process is expressly made patentable. 35 U.S.C. §§ 101, 100(b). See Expanded Metal Co. v. Bradford, 1909, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Cochrane v. Deener, 1877, 94 U.S. (4 Otto) 780, 787–788; 24 L.Ed. 139. But a process patent is subject to the same tests as to patentability as any other patent. One test has been codified in the Act of July 19, 1952, c. 950, § 1, 66 Stat. 798, 35 U.S.C. § 103, as follows:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

This statute was construed and applied in Graham v. John Deere Co., 1966, 383 U.S. 1, p. 17, 86 S.Ct. 684, p. 694, 15 L.Ed.2d 545, where the Court said:

"While the ultimate question of patent validity is one of law, (citation), the § 103 condition [nonobviousness] which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject

matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of 'Nonobviousness': A Non-technical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964)."

We have discussed the scope and content of the prior art and the differences between it and the claim at issue. It is uncontradicted that two of Proler's three steps, and their sequential combination, are anticipated by Gregg. This leaves only the third—the compacting or balling up of individual pieces. In considering that step, it must be emphasized that the *product* of that step, the denser, "fluent mass" of individual pieces, is *not* covered by the patent. Thus, having conceived the product, all that remained for Proler to determine was how to get it. This would consist of perhaps two steps: first, a determination that making the pieces smaller would produce the desired product, and second, the use of some means to make them smaller. Yet the latter—the means—is not claimed. The claim is so broad as to cover *any and every* such means, no matter how simple or how old, or how well known. Thus the essence of the patent claim must lie wholly in the idea that a "mass" of smaller pieces is a better product, because it is more dense and need not be baled, but can be handled as a "mass" of loose pieces, or, to prettify the concept, as "a fluent mass." To us, this is just not patentable invention. It would be obvious to anyone who knows anything at all about materials and materials handling. Proler himself analogizes graded hard coal or rock to the desired product. The analogy is apt—and obvious.

We are strengthened in our conclusions by the caution expressed by the Supreme Court in its consideration of combination patents. That is what this patent is, the combination with two known steps, of a third, each using a process that is old, well known, and not patentable. In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, pp. 152–153, 71 S.Ct. 127, pp. 130–131, 95 L.Ed. 162, the Court said:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechnics. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. * * *

"To bring these devices together and apply them to save the time of customer and checker was a good idea, but scores of progressive ideas in business are not patentable, and we conclude on the findings below that this one was not."

The Court reversed a judgment, affirmed by the Court of Appeals, upholding the patent. This is analogous to the

granting of summary judgment in our case; it is a holding that the patent is invalid as a matter of law.

That case was not a process patent case, but the principles that it announces are equally applicable here. In Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973, the Court applied similar principles to a process patent. It held the patent invalid as obvious, saying:

"He who is merely the first to utilize the existing fund of public knowledge for new and obvious purposes must be satisfied with whatever fame, personal satisfaction or commercial success he may be able to achieve. Patent monopolies, with all their significant economic and social consequences, are not reserved for those who contribute so insubstantially to that fund of public knowledge."

See also Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Groen v. General Foods Corp., supra, 402 F.2d at 710, 711; Cutter Laboratories, Inc. v. Lyophile Cryochem Corp., 9 Cir., 1949, 179 F.2d 80, 84.

■ Here we have an accumulation, not of old devices, but of old processes. Proler himself had used rollers to flatten or crush old tin cans, a process that certainly densified and compacted them in the sense in which those words are used in claim 9. To sustain claim 9 would be "to subtract from former resources freely available to skilled artisans." It would make patentable the addition to the Gregg process of the mere process of making little ones out of big ones. We therefore do not reach the "secondary considerations" mentioned in Graham, supra. They cannot make the unpatentable patentable. As the Court said in Dow Chemical Co., supra, 324 U.S. at 330, 65 S.Ct. at 651;

"Finally, petitioner claims that the Grebe-Sanford process has filled a long felt want and has been a commercial success. But these considerations are relevant only in a close case where all other proof leaves the question of invention in doubt. Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 81 L.Ed. 1049; McClain v. Ortmayer, 141 U.S. 419, 428, 429, 12 S.Ct. 76, 35 L.Ed. 800. Here the lack of invention is beyond doubt and cannot be outweighed by such factors."

See also Jungersen, supra, 335 U.S. at 567, 69 S.Ct. 269; Walker v. General Motors Corp., supra, 362 F.2d at 60. As to these matters, there is conflict in the evidence, an issue of fact, but in this case the issue is not as to material fact.

■ We hold that claim 9 of Proler reissue patent Re. 325,034 is invalid for want of invention.

Affirmed.

[October 31, 1969]

On Petition for Rehearing

## ORDER

Before: DUNIWAY and CARTER, Circuit Judges, and Crocker, District Judge.

The petition for a rehearing and suggestion of an in banc hearing, together with a copy of this order, have been submitted to the full court. No judge has voted for a hearing in banc.

The petition for a rehearing is denied and the suggestion of a hearing in banc is rejected.