Charles D. ASHCROFT and Milton A. Engle, Appellants,

v.

PAPER MATE MFG. COMPANY, Appellee.

No. 23328.

United States Court of Appeals, Ninth Circuit.

Nov. 18, 1970.

William Poms (argued) of Miketta, Glenny, Poms & Smith, Los Angeles, Cal., for appellee.

Before BARNES, BROWNING, and CARTER, Circuit Judges.

BARNES, Circuit Judge:

This is an action for damages for the infringement of United States Patent No. 3,018,761. The District Court granted defendant's motion for summary judgment and held the appellant's patent invalid under 35 U.S.C. § 101 as lacking novelty, under 35 U.S.C. § 102 as claiming more than was invented by the patentee, and under 35 U.S.C. § 103 as being obvious to a person having ordinary skill in the art. In addition, the Court also found that the facts and circumstances of this case make it "exceptional" within the meaning of 35 U.S.C.A. § 285, and awarded $4,000.00 in attorneys' fees to the defendant.[1]

On appeal, the plaintiffs contend that the District Court erred (1) in invoking summary judgment proceedings, (2) in its application of substantive law to find the patent invalid, (3) in awarding partial attorney's fees to the defendant and (4) when upon remand, it permitted the introduction of the missing exhibits, and a new summary judgment, without affording plaintiffs a further hearing.

(1) SUMMARY JUDGMENT

There can be no dispute that the granting of a motion for summary judgment, which renders a patent claim invalid, is proper when "there is no genuine issue as to any material fact and ∗ ∗ the moving party is entitled to judgment as a matter of law". Rule 56(c), F.R.Civ.P. The granting of such a motion is still proper even though there are some issues of fact presented in the affidavits or other evidence before the court, unless those issues are ones of material fact. If they are not, summary

Paul L. Gardner (argued), of Kendrick & Subkow, Los Angeles, Cal., for appellant.

1. After the record had been designated to this Court on appeal, it was discovered that a number of exhibits were not included as a part of that record. This Court, therefore, remanded the case to the District Court, where, according to a stipulation of the parties, the missing exhibits were made part of the record and a new judgment was entered.

judgment may be granted. See Walker v. G. M. Corp., 362 F.2d 56, 59 (9th Cir. 1966), Proler Steel Corp., Inc. v. Luria Brothers and Co., 417 F.2d 272, 273–274 (9th Cir. 1967) and cases cited therein.

## (2) THE PATENT CLAIM AND THE APPLICABLE LAW

The patent at issue is directed to a ball-point pen refill unit which comprises a pair of ball-point cartridges detachably connected to one another in tandem or "piggy-back" fashion by a connector element. The connector element joins the two cartridges to form a rigid unit which may be projected and retracted in a conventional pen barrel and readily removed from and inserted into the barrel. The connector also permits ready detachment of the two cartridges so that their positions may be reversed to place either in the writing (lower) position.

In one embodiment, the connector element is a bushing carried in the upper end of each cartridge. The writing end of the other cartridge fits tightly, but removably, into this bushing to form a dual-cartridge unit which may be employed in a conventional ball-point pen barrel. When the lower cartridge is out of ink, the unit may be removed from the barrel and the positions of the cartridges reversed to place the unused upper cartridge in the lower (writing) position. The reassembled unit may then be replaced in the pen barrel and employed until the second cartridge runs dry.

A vent is provided in each cartridge to permit the feed of ink to the writing tip. Provision of such a vent is required, because the tight fit of the writing tip of the upper cartridge in the bushing in the lower cartridge would otherwise seal the lower cartridge from the atmosphere and inhibit the free flow of ink to its writing tip.

Claims 4–6 of the Ashcroft Patent are directed to this first or "bushing" embodiment shown in Fig. 1 (defendants' Exhibit C). In the second embodiment of the Ashcroft Patent, the connector element is a sleeve which tightly but detachably joins the two cartridges. Claims 1–3 of the Ashcroft Patent are directed to this second or "sleeve" embodiment.

The District Court found that the patent was invalid on three grounds. Because we agree that the claims of the appellants "would have been obvious at the time the invention was made to a person having ordinary skill in the art * * ", (35 U.S.C.A. § 103), we affirm the decision below and need not, nor will we, reach the patent's validity under §§ 101 and 102.

At the outset we note the teachings of Graham et al. v. John Deere Co. of Kansas City, et al., 1965, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 and Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Co., 1950, 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162, the two more recent Supreme Court decisions on patent validity. This Court extensively discussed the principles announced in these cases in several recent decisions. See Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., 375 F.2d 85, 87–88 (9th Cir. 1967) and Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 3–4 (9th Cir. 1963). Despite the traditional aversion of American Law to monopoly, exclusive rights to an invention are granted solely as a "reward, an inducement, to bring forth new knowledge. * * * Only inventions and discoveries which furthered human knowledge, and were new and useful, justified the special inducement of a limited private monopoly." Graham, 383 U.S. at p. 9, 86 S.Ct. at p. 689. The history of the American patent system is replete with the continuing tension between a strong public policy against monopoly and a desire to encourage inventions which will benefit the public. This tension has been resolved by the courts setting a high and exacting standard for patent validity. As we noted in Jeddeloh:

"The entire tenor of the Graham decision is that there should be strict observance of all three explicit condi-

tions precedent to the issuance of a patent, namely novelty, utility and nonobviousness, *with special emphasis being placed on the latter."* (Id. 375 F.2d at 87). (Italics added.)

In the same vein, this Court has stated:

"[I]t follows that though a device may be new and useful it is not patentable if it consists of no more than a combination of ideas which are drawn from the existing fund of public knowledge, and which produces results that would be expected by one skilled in the art. A public grant of the private power to exclude others from making, using, and selling such a device simply 'withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men.' No balancing public benefit results from such a patent since the fund of freely available public knowledge is reduced during the period of monopoly, and is only restored rather than enhanced when that period ends." *Griffith, supra* 313 F. 2d at p. 3 (Citations omitted.)

The applicable standard which we must follow in § 103 cases was clearly outlined in *Graham, supra* 383 U.S. at p. 17, 86 S.Ct. at 694, where the Court said:

"[W]hile the ultimate question of patent validity is one of law (citation), the § 103 condition (nonobviousness), which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

While the prior art is quite extensive, the techniques and principles it discloses are basically simple and straight forward. The appellants do not contend that any elements in their claim are new or different. (See Findings of Fact, XII.) Instead, they assert that this combination of old elements serves a new function and is not obviously disclosed by the prior art. The art of writing instruments, which includes pencils, fountain pens, stylographic pens and ballpoint pens, is ancient and crowded. Rather than repeat the District Court's exhaustive treatment of the prior art and relevant patents (See Findings of Fact IX–XIX), a short summary will suffice.

The use of more than one writing instrument in axial alignment within the same barrel or casing is disclosed in prior art patents to Greenwald 468,744, Stockman 362,404, Bassi 1,808,489, and Lang (Swiss) 286,000. Similarly, the use of a sleeve coupling between cartridge sections to hold writing instruments in alignment is shown in Stockman, Bassi, and Feigenbaum (British) 633,452. Some couplings hold the two sections together by means of friction while others use a threaded screw technique. Both methods are clearly equivalent and interchangeable to anyone with any mechanical knowledge. In ball-point pen technology, the most modern field in this art, only one technique or principle is relevant to our inquiry. Ball-point pens were widely known and used for several years before this alleged invention. In order for the pasty, viscose ink to flow down to the ball tip, it is necessary to admit air to the rear portion of the ink chamber. For this reason, the ends of most ball-point pen cartridges are open. Prior art clearly discloses that those cartridges which have sealed ends use side vents (e. g. holes or slits) to allow the entrance of atmospheric pressure. (See British Patent 2,413,904 issued in 1947, and Thull Patent 2,593,366 of 1952).

The single, most pertinent prior art patent and the one which presents the most substantial question as to the existence of a genuine issue of material fact is the Swiss Lang patent cited earlier. Although the parties are in dispute over the teachings of this prior art reference, we find that the patent in suit is an obvious improvement over any reasonable interpretation of Lang and therefore no issue of material fact is raised by it. The Lang patent discloses tandem writing instruments in axial alignment using viscose pasty ink. Both elements are within a pen barrel and they "are simply shoved one inside the other". The writing tip of the top instrument is encased within the top portion of the lower instrument. There is dispute as to (1) whether the instrument disclosed is a ball-point pen, and (2) whether the fit between the two sections is loose or tight. Although the translation refers to them as writing stems, the specification that "a paste-like ink is used (as is common at the present time)" strongly leads to the inference that these stems are, in fact, ball-point pens. Even if they are not, the substitution of such ball-point pens would be readily indicated even to one unskilled in the art.

The disagreement on the question of whether the fit between the instruments is snug or loose also raises no difficult problems. The appellants contend that because no vent is disclosed, a tight fit would render the pen inoperative. As discussed above, however, the venting principle which would have solved this problem was both simple and well known at the time. If the fit was loose, it could be used in that manner, or the diameters of the two sections could be manipulated, or a bushing employed to tighten it. Once the fit is tightened, a vent must be used. The Ashcroft patent itself states that the relationship can be snug or loose depending upon the design requirements of the pen. (Defendant's Exhibit C, Col. 2, lines 49–52). Use of a bushing is really no more than an extension of the well-known expedient of fit-

ting one tube into another of slightly larger diameter.

As the foregoing discussion would indicate, the "level of ordinary skill in the pertinent art" is quite above the elementary and easily understood modifications which distinguish this patent over the prior art. All that is necessary is a basic knowledge of ball-point pen technology (including the need for venting), an acquaintance with tandem writing instruments and some familiarity with simple connecting elements such as sleeves and bushings.

■ After a thorough analysis of the prior art and the claims at issue in light of the basic precepts of patent validity set out for us by the Supreme Court, we agree with the trial court that the Ashcroft patent is invalid as a matter of law, because obvious within the meaning of § 103.

■ In doing so, we have given the appellant the full weight to be accorded the statutory presumption of validity in 35 U.S.C.A. § 282. Such a presumption is merely an aid to inquiry and does not automatically foreclose thought and analysis. "The presumption is of no effect when it is wholly dissipated by rebutting considerations." Groen v. General Foods Corporation, 402 F.2d 708, 711 n. 2 (9th Cir. 1968).

■ The appellants also contend that Paper Mate's copying of appellant's design and the similarity of its own patents demonstrate the validity of the patent in suit. As we said in *Walker, supra,* 362 F.2d at p. 60:

"[T]hese are only 'secondary considerations,' which may provide 'indicia of obviousness or unobviousness,' where that issue is in doubt. They do not establish invention where, as here, obviousness is clear." (See also cases cited therein and *Proler, supra* 417 F.2d at 278.).

## (3) ATTORNEY'S FEES

Section 285 of 35 U.S.C. provides that: "[T]he Court in exceptional cases may award reasonable attorney fees to the

prevailing party". In Monolith Portland Midwest Co. v. Kaiser Aluminum and C. Corp., 407 F.2d 288, 293–298 (9th Cir. 1969), this Court recently discussed the applicable standards which the lower courts must follow in granting such fees. We stated that:

"[A] court 'may' award or deny attorney's fees in its discretion * * *. Congress's intent in enacting the statute was not to permit recovery of attorney's fees routinely in patent cases, but to permit a court to award fees in an extraordinary case to prevent gross injustice." Monolith, supra at p. 294.

Appellants contend that their conduct was not exceptional within the meaning of § 285, and that the District Court erred in granting recovery of the fees against them.

■ We cannot reverse the District Court for the exercise of its discretion unless its findings were clearly erroneous. The trial judge made extensive findings in this area, Findings XXV–XXVIII, and found, *inter alia,* that the plaintiffs "knowingly and willfully concealed" Engle's ownership interest in the patent; that this concealment misled the defendant and prolonged its efforts; that the plaintiffs misrepresented the character of exhibits (Finding XXVI), that plaintiffs and their counsel unnecessarily prolonged the taking of depositions by improper tactics (Finding XXVII), and that Engle refused to obey a subpoena to produce documents and was subsequently found to be in contempt of court (Finding XXVIII), of which he was later ordered purged. Our thorough review of the record discloses there exists substantial evidence to support these findings. We cannot say that they are unreasonable, or clearly wrong.

The appellants cite Agrashell, Inc. v. Hammons Products Co., 248 F.Supp. 258, 260 (D.C.Mo.1965) for the proposition that the failure to join an indispensable party is not the sort of conduct which renders a patent suit exceptional. In that case, however, the trial court's re-

fusal to grant attorney's fees was based upon the defendant's delay in objecting to the lack of an indispensable party. Here, it was the plaintiffs who concealed the defect and the defendant made timely objection to Ashcroft's failure to join Engle as a plaintiff.

■ Although the trial court indicates and we might infer that its award may have been based solely on the costs to defendant arising out of this failure to join Engle rather than on the full range of conduct mentioned above, we still find no error.[2] The award of $4,000.00 does not appear to be unreasonable or excessive, even if the court intended only to compensate defendant for the burden placed on it by Ashcroft's failure to join Engle when the action was first filed.

## (4) THE COURT'S REFUSAL TO HEAR ARGUMENT ON REMAND

■ We find this contention both frivolous and completely lacking in merit. Our examination of the record shows that these exhibits (which were not introduced prior to the original appeal) were before the court and considered by it when it made its original decision, and that it examined all of the relevant evidence before making such decision. Copies of the missing exhibits were in the courtroom during the summary judgment hearing, and were even quoted from during that hearing. The only purpose for the remand was to include the missing exhibits in the record so that this Court might consider them on appeal. The appellants had ample opportunity to produce evidence, and convince the judge of their assertions, at the original hearing. On remand, the trial judge correctly saw no purpose in reopening the matter for further argument. The procedure followed by the trial court for entering the exhibits into the record on appeal was fully justified by Rule 10(e) F.R.App.P. The parties made the stipulation (Trial Record on Remand, Vol. 5, p. 4) provided for by

2. See Reporter's Transcript, pp. 176–184, and Finding XXV.

the rule, and were not thereby entitled to further argument, as a matter of right. There was no abuse of the trial court's discretion in refusing to hear additional argument.

The Judgment is Affirmed.