**FARMER BROTHERS COMPANY,**
Plaintiff,

v.

**The COCA-COLA COMPANY,**
Defendant.

**Civ. A. No. 73-2922-AAH.**

United States District Court,
C. D. California.

Oct. 29, 1974.

Nilsson, Robbins, Bissell, Dalgarn & Berliner, by Billy A. Robbins, and Walker, Wright, Tyler & Ward, by Oliver S. Northcote, Los Angeles, Cal., for plaintiff.

O'Melveny & Myers by Donald M. Wessling, Los Angeles, Cal., Baker & Bottes by Frank B. Pugsley, Larry B. Feldcamp, G. Byron Jamison, II, Houston, Tex., John R. Martin, W. Dexter Brooks, Atlanta, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

### Findings of Fact

1. On June 22, 1972, this action was filed by Farmer Brothers Company of Torrance, California, in the District Court for the Southern District of Texas (Civil Action No. 72–H–819) alleging infringement of its "Coffee Pellet Process" patent, No. 3,459,558, by the Foods Division of The Coca-Cola Company. The coffee manufacturing facilities of defendant are located in Houston, Texas,

Omaha, Nebraska, and Anaheim, California.

2. On October 11, 1973, plaintiff moved for a transfer of this case to the Central District of California, on the ground that the live testimony of Roy Farmer, chief executive officer of plaintiff and copatentee of the patent in suit, was necessary to establish an early undocumented conception date for his "invention", and that Mr. Farmer because of health reasons could not appear at a trial outside of Los Angeles. Plaintiff's motion was granted on November 30, 1973, and this action was transferred to this Court.

3. Farmer Brothers' patent, No. 3,459,558, claims a modification to conventional processes for producing roast and ground coffee. In this modification coffee chaff—the light, flaky skin of a coffee bean—is pelletized, added back to the roasted beans and ground to form the roast and ground coffee product. The only independent claim in the patent includes the four steps of:

(1) removing coffee chaff from the roasting operation;

(2) collecting said chaff;

(3) pelletizing said chaff; and

(4) adding the resulting pellets to the whole roasted coffee beans in the cracking or grinding step to form a finished product containing the treated chaff in a form substantially indistinguishable from the remaining coffee.

The three dependent claims describe details of the chaff removal, collection and pelletization steps (steps 1–3).

4. The coffee pellet process described and claimed in the Farmer Brothers patent is very simple and can be readily explained and understood without the use of expert testimony. Farmer deposition, Vol. I, page 100.

5. Prior to their "invention" and more than one year prior to the filing of their patent application, patentees Farmer and Chandler were aware that prior industry processes (including that of plaintiff Farmer Brothers Company) included the removal and collection of coffee chaff from the roasting operation. Their knowledge of prior industry practices also extended to the more detailed aspects of chaff removal and collection described in dependent claims 2–3. Farmer deposition, Vol. I, page 36; Chandler deposition, pages 45–46; Memorandum from Chandler to MacIntosh, dated August 9, 1965 (Farmer deposition exhibit 13). However, the patentees' knowledge of prior industry practices concerning chaff removal and collection systems was not conveyed to the Patent Office. Moreover, the patentees' emphasis on these two steps in the claims and their misleading statements in the patent specification at column 1, lines 60–64, falsely implied that their "invention" solved an alleged problem of removing and collecting chaff from the roasting operation.

6. The patentees did not at any time make a full and fair disclosure to the Patent Office of their knowledge of prior chaff removal and collection activities. Such information was pertinent to the patentability of their "invention".

7. Prior to their "invention" and more than one year prior to the filing of their patent application, patentees Farmer and Chandler were aware that another coffee company was pelletizing its coffee chaff. Although stating during his first deposition that no one to his knowledge had pelletized chaff before (Farmer deposition, Vol. I, page 100), Mr. Farmer admitted during his second deposition, more than 1½ years later, that he always had been aware that MJB was pelletizing coffee chaff at its plant in San Francisco prior to his "invention." Farmer deposition, Vol. II, pages 315–316. Mr. Chandler also learned of prior chaff pelletization by receipt of a letter from an equipment salesman, Mr. Piez, dated May 28, 1963 (Farmer deposition exhibit 7). Although the patentees discussed in their patent application pelletizers of "the type used for pelletizing feed in dairies for feed lot operators and in pelletizing

feed for hogs and poultry production" (see column 1, lines 66–68, of Farmer Brothers' patent), they did not disclose to the Patent Office their knowledge that coffee chaff had been successfully pelletized by others prior to their "invention" and more than one year prior to the filing of their patent application.

8. The patentees were not at any time candid with and did not make a full and fair disclosure to the Patent Office concerning their knowledge of chaff pelletization. In view of Mr. Farmer's admission that "the main part of the invention" was the pelletizing of chaff (Farmer deposition, Vol. I, page 100), it is clear that the patentees' knowledge of chaff pelletization that was withheld from the Patent Office was pertinent to the patentability of the "invention."

9. As previously indicated, three of the four steps in claim 1, removal, collection and pelletization of coffee chaff, and the more detailed limitations in claims 2–4, were known by the patentees to be part of prior industry practices. Moreover, with respect to the fourth step in claim 1, the patentees admitted during the prosecution of their patent application that the incorporation of coffee chaff into roast and ground coffee was old. See file history of Farmer Brothers' patent, pages 4–5 of "Amendment" filed September 5, 1968. It would have been obvious to anyone having this knowledge of prior industry practices to reintroduce chaff in pellet form for grinding with the roasted beans if he desired to produce ground coffee containing chaff.

10. Depositions and documentary exhibits show that General Foods Corporation pelletized coffee chaff, reintroduced the resulting pellets for grinding with the whole roasted coffee beans, and sold the resulting ground mixture as Maxwell House coffee at its Houston, Texas plant in the early 1950's, at least twelve years prior to the filing of the Farmer Brothers' patent application. Kotar deposition, pages 8–11 and 42–44; Lewis deposition, pages 10–11, 16–50; General Foods' Authorization for Expenditure document, dated March 4, 1952 (Kotar deposition exhibit 6). This confirms that it was obvious to coffee processors to reintroduce chaff pellets for grinding with roasted beans.

11. Despite the fact that plaintiff's president and chief executive officer, co-patentee Roy Farmer, knew or should have known that the Patent Office was not informed that the chaff removal, collection and pelletization steps of the alleged invention were part of prior industry practices, Mr. Farmer nevertheless authorized the filing of the present suit against defendant for infringement of the Farmer Brothers' patent. Farmer deposition, Vol. I, page 166.

12. It was not until the taking of Mr. Farmer's second deposition on May 23, 1974, that Mr. Farmer finally admitted that he had been aware prior to his invention that MJB was pelletizing coffee chaff. Farmer deposition, Vol. II, pages 315–316. This very pertinent information should have been disclosed during Farmer's first deposition in September of 1972, when, after describing chaff pelletization as "the main part of the invention", Mr. Farmer testified that to his knowledge "No one had done that before." Farmer deposition, Vol. I, page 100. See also pages 52, 54, 56, 81, 189–190 and 219–223.

## Conclusions of Law

1. This court has jurisdiction of this patent infringement action under 28 U.S.C. § 1338(a). Venue of this action is properly laid in the Central District of California by reason of 28 U.S.C. § 1400(b) and defendant's operation of a coffee manufacturing facility within the district.

2. As was stated by the Ninth Circuit in Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 294 (1969):

"A patent applicant has a duty to the Patent Office to make a full and fair disclosure of all facts which may affect the patentability of his invention. A breach of that duty prevents the Patent Office from properly performing its function of preventing the

issuance of unlawful patent monopolies."

The failure to perform such duty renders a patent void and unenforceable. Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 267 F. Supp. 726 (C.D.Cal.1966), modified on amount of attorney fees, 407 F.2d 288 (9th Cir. 1969). The patentees' failure to be candid with and to make a full and fair disclosure to the Patent Office of all facts relating to the chaff removal, collection and pelletization steps of their alleged invention constitutes a breach of their duty to the Patent Office and thus renders the Farmer Brothers' patent void and unenforceable.

■■ 3. The usual presumption of patent validity (35 U.S.C. § 282) is vitiated when an applicant did not inform the Patent Office, and the Patent Office did not consider, the most pertinent prior art. Groen v. General Foods Corp., 402 F.2d 708 (9th Cir. 1968); Henderson v. A. C. Spark Plug Division of General Motors Corp., 366 F.2d 389 (9th Cir. 1966); Monroe Auto Equipment Co. v. Superior Industries, Inc., 332 F.2d 473 (9th Cir. 1964); Maurice A. Garbell, Inc. v. Boeing Co., 385 F. Supp. 1 (C.D.Cal.1973). In view of the patentees' failure to inform the Patent Office that the coffee chaff removal, collection and pelletization steps were known to be part of prior industry practices and/or the Patent Office's inability to consider General Foods' prior use of a chaff pelletizing and addback system, the statutory presumption of validity is completely rebutted and destroyed.

■■ 4. A method or process patent, like an apparatus patent, is invalid for obviousness under 35 U.S.C. § 103 if it does no more than combine ideas or information which are drawn from the existing fund of public knowledge and which produces results that would be expected by one of ordinary skill in the art. Hewlett-Packard Co. v. Tel-Design, Inc., 460 F.2d 625 (9th Cir. 1972); Ashcroft v. Paper Mate Mfg. Co., 434 F.2d 910 (9th Cir. 1970); Proler Steel Corp.,

Inc. v. Luria Brothers & Co., Inc., 417 F.2d 272 (9th Cir. 1969). In view of the patentees' own admissions that prior industry practices included removal, collection and pelletization of coffee chaff, and that the reintroduction of chaff had been disclosed in the prior art. It was obvious to reintroduce the chaff in pellet form for grinding with the whole roasted coffee beans. Thus, the Farmer Brothers' patent is invalid under 35 U.S.C. § 103.

5. The obviousness of the alleged invention of the Farmer Brothers' patent is confirmed by General Foods' prior use of a process at its Houston plant in the early 1950's where chaff was pelletized and the resulting pellets were reintroduced for grinding with the whole roasted coffee beans. The resulting ground coffee containing chaff was sold as Maxwell House Coffee.

■ 6. It is well settled in this and other circuits that summary judgment of patent invalidity is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; Proler Steel Corp., Inc. v. Luria Brothers & Co., Inc., 417 F.2d 272 (9th Cir. 1969); Ashcroft v. Paper Mate Mfg. Co., 434 F.2d 910 (9th Cir. 1970). Summary judgment is proper in this case as the material facts respecting the invalidity of the Farmer Brothers' patent have been admitted by the patentees. Also the evidence is not controverted that General Foods reintroduced pelletized coffee chaff for grinding with the whole roasted beans at its Houston, Texas plant in the early 1950's. These undisputed facts compel the conclusion that the Farmer Brothers' patent is invalid, void and unenforceable.

■ 7. A patent applicant's breach of duty to the Patent Office in failing to disclose pertinent prior art is relevant in determining not only the validity of his patent, but also his good faith in maintaining a subsequent infringement action. Such a breach of duty to the Patent Office is enough standing alone to convert his later infringement action

**600**

into an exceptional case within the meaning of 35 U.S.C. § 285. Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 294 (9th Cir. 1969). The filing of the present action by plaintiff, as authorized by copatentee and chief executive officer Roy Farmer, coupled with the patentees' breach of duty to the Patent Office in failing to make a full and fair disclosure of their knowledge of chaff removal, collection and pelletization, renders this case an exceptional one under 35 U.S.C. § 285.

8. The concealment of pertinent information during discovery has also been held to be grounds for declaring the case to be an exceptional one under 35 U.S.C. § 285. Ashcroft v. Paper Mate Mfg. Co., 434 F.2d 910 (9th Cir. 1970). The inordinate delay by Mr. Farmer in admitting his knowledge of MJB's chaff pelletizing activity is an additional reason for declaring this an exceptional case.

See also D.C., 57 F.R.D. 528.

9. As this action is an exceptional case under 35 U.S.C. § 285, defendant is entitled to its attorney fees in the amount of $2,000. Let judgment be entered accordingly.