Clifford A. SCHROEDER, an Individual, et al., Plaintiffs-Appellants,

v.

OWENS–CORNING FIBERGLAS CORPORATION, a corporation, Defendant-Appellee.

No. 73–2796.

United States Court of Appeals, Ninth Circuit.

April 15, 1975.

James C. McConnon, Philadelphia, Pa. (argued), for plaintiffs-appellants.

Richard A. Wallen, Los Angeles, Cal. (argued), for defendant-appellee.

OPINION

Before CARTER, WRIGHT and GOODWIN, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this action for infringement of patent No. 3,216,459 (hereinafter the '459 patent), the district judge entered summary judgment for the defendant, hold-

ing the patent invalid under 35 U.S.C. §§ 102(b) and 103. The judgment of invalidity was based on several grounds: obviousness in view of an earlier Edwards patent, No. 2,980,144, obviousness in view of a trade brochure of Flexible Tubing Corporation, and because of anticipation under both. On appeal by the holders of patent '459, we reverse.

The subject matter of the '459 patent is a flexible insulated duct for air conditioning and heating systems. Appellants Schroeder and Clark were the inventors. The patent was issued in November 1965 and certain patent rights were sold to Pittsburgh Plate Glass, Inc. (PPG), with the inventors retaining a limited license to manufacture and sell the product in California through their corporation, Glass Insulation Company (GIC). The two corporations join the inventors in this appeal.

Our key issue here is whether or not, there is a genuine issue as to any material fact surrounding the dispute over patent '459, so as to render inappropriate the granting of summary judgment.

The appellee reminds us that we have affirmed summary judgments of dismissal in patent infringement suits, and they cite inter alia our decisions in Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295 (9th Cir. 1970), and Ashcroft v. Paper Mate Mfg. Co., 434 F.2d 910 (9th Cir. 1970). The appellants would have us follow Northrop Architectural Systems v. Lupton Mfg. Co., 437 F.2d 889 (9th Cir. 1971).

In *Schwinn,* we considered the propriety of summary judgment in patent cases and stated:

> It is true that summary judgment is seldom used in patent cases. This is largely a result of the technological problems which ordinarily arise in litigation involving a utility (as opposed to design) patent. In such cases, the trial court often needs the assistance of expert testimony to determine the nature of the patented device as well as the scope and content of the pertinent prior art.

444 F.2d at 297.

The *Schwinn* case involved a patented bicycle seat and we and the district judge had before us illustrations, advertisements, and photographs which indicated unequivocally that no material factual issues were in controversy. Thereafter, we concluded that the summary judgment procedure was proper under the circumstances of that particular case.

*Ashcroft* was another patent case with no serious complexities. The suit was an action for damages for patent infringement related to the "piggy-back" ball point pen refill unit. A district court summary judgment held the patent invalid, *inter alia,* for obviousness. We affirmed, stating that:

> There can be no dispute that the granting of a motion for summary judgment, which renders a patent claim invalid, is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. The granting of such a motion is still proper even though there are some issues of fact presented in the affidavits or other evidence before the court, unless those issues are of material fact.

434 F.2d at 911.

The simplicity of the patents involved, together with sufficiently harmonious presentations of the issues by counsel, brought both *Schwinn* and *Ashcroft* within the summary judgment standards. Such was not the case in *Northrop.* That appeal presented this court with almost the identical issue posed by this one. The suit involved the validity of some patent claims on closure doors employed in the construction of homes and apartments. By summary judgment the district court declared the claims invalid for obviousness.

On appeal, we set aside the summary judgment and held that substantial contrary assertions by expert witnesses related to the determination of whether or not the subject matter of a patent was obvious presented a material issue of fact precluding summary judgment We said:

At the outset, we are faced with the rule that a summary judgment is available only if there is no genuine issue of material fact involved. The question to be resolved on a motion for a summary judgment is whether there is sufficient evidence supporting the claimed factual dispute to require a judge or a jury to decide the truth of the different versions in a trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); McGuire v. Columbia Broadcasting Systems Inc., 399 F.2d 902, 905 (9th Cir. 1968); Industrial Building Materials, Inc. v. Interchemical Corp., 437 F.2d 1336 (9th Cir. Nov. 23, 1970). 437 F.2d at 891.

Certain guidelines emerge from these three cases which assist in determining whether a patent infringement case is suitable for summary judgment disposition. As in *Northrop,* material issues of fact will often emerge from genuine conflicts in the testimony of experts. Another hurdle for the trial court will be the definition of various facets of the prior art against which the uniqueness of a patent must be gauged. Not many cases will survive these difficulties and material issues of fact will remain for ultimate disposition after trial. This appeal is not one of the exceptions.

Unlike the rudimentary composition and design technique of a ball point pen or bicycle seat, the significance of the elements characteristic to flexible ducting are not as easily ascertainable. The '459 patent has four elements: (1) a continuous wire helix, (2) a thick tubular blanket of porous insulating material such as fiberglass which encircles the wire helix, (3) a means for maintaining the wire convolutions in their spaced relationship, and (4) a flexible sleeve such as vinyl plastic encircling the tubular blanket and serving as an air retaining member as well as the exterior surface of the ducting.

Prior to the issuance of the '459 patent, all of these elements had been used in the research and development of flexible ducting. However, the product of the prior art had these disadvantages: high cost, limited flexibility, poor sound attenuation and air flow characteristics, and lack of good thermal insulation. Consequently, the use of flexible ducting was very limited. The crux of the appellants' argument is that they combined structurally the components used in the past in a unique manner producing results unparalleled in the prior art.

The results which they claim include the maintenance of nonturbulent air flow through the duct whether in a bent or straight position. Because of the distance air must be circulated in a heating or cooling system, it is imperative that the interior surface of the duct have minimal resistance to the passage of air. Schroeder and Clark's experts claimed that no ducting had accomplished this easy-air-flow to the degree mastered by the '459 patent without sacrificing efficient thermal or acoustic insulation. Appellants argue that the '459 patent mastered these problems by designing a duct with an integrated structure that only slightly radially compressed the insulation material against the underlying helix.

█ ·The parties differ as to whether this structural combination was really unique when viewed in light of the flexible ducting illustrated by the Edwards patent and the Thermoflex brochure. Although the district court found that neither the Edwards patent nor the Thermoflex brochure showed insulating material comprising a tubular member only slightly radially compressed, it concluded that the '459 patent was both anticipated and obvious. We think these conclusions necessitated the resolution of genuine issues of material fact properly within the province of the trier of fact.

█ An invention is said to be anticipated only if another invention already known or used is identical in substance. "Unless all of the same elements are found in exactly the same situation and united in the same way to perform the identical function in a single prior art

reference there is no anticipation." Walker v. General Motors Corporation, 362 F.2d 56, 68 (9th Cir. 1966). *See also* Ceramic Tilers Supply, Inc. v. Tile Council of America, Inc., 378 F.2d 283, 284 (9th Cir. 1967); Cool-Fin Electronics Corp. v. International Electronic Research Corp., 491 F.2d 660, 662 (9th Cir. 1974).

We cannot harmonize the court's finding, that the relevant prior art references were not identical to the composite of the '459 patent, with its conclusion of law rendering the latter invalid as anticipated. Anticipation is a technical defense which must meet strict standards. The only slightly radially compressed insulation material is the key feature to the claimed success of the '459 patent. If this characteristic did not exist in the prior art references, then it could not have been anticipated by them.

■ Under the requirements of 35 U.S.C. § 103, in order to resolve the issue of obviousness the trier of fact must inquire into several factual questions: (1) the scope and content of the prior art; (2) the differences, if any, between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Such secondary considerations as commercial success, long felt but unsolved needs, and the failure of others may be utilized to illuminate the circumstances surrounding the origin of the subject matter of the challenged patent. *Id.* at 17–18, 86 S.Ct. 684.

Appellants produced expert testimony relevant to the issue whether or not the Edwards patent and the Thermoflex brochure were relevant indicators of the scope of the prior art. At a minimum, it cast doubt on whether the industrial function of these prior art references were analogous to the industrial purpose of the '459 patent. Although expert testimony offered in depositions by the appellees suggests the opposite conclusion, under the *Northrop* rationale, summary judgment in these circumstances was improper.

■ On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of any material fact. For this purpose, evidence to support the motion must be viewed in a light most favorable to the party against whom the motion is directed. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We do not think the appellees sustained this burden.

Accordingly, we reverse and remand for a trial on the merits.