53 CCPA

## Application of Erwine LAVERNE and Estelle Laverne.
### Patent Appeal No. 7546.

United States Court of Customs and Patent Appeals.

March 10, 1966.

Michael S. Striker, Gordon D. Coplein, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of application serial No. D–68,190, filed January 4, 1962, for a Design for Chair or the Like.

The sole issue, as we see it, is the obviousness of appellants' design, under 35 U.S.C. § 103, in view of the single reference relied on by the board, the design patent to Eero Saarinen, Des. 181,945, issued Jan. 21, 1958. The Patent Office Solicitor so regarded the issue, but neither the examiner nor the board referred to any statutory ground of rejection.

Appellants' chair and the Saarinen chair are of the same general type in that each consists of a one-piece molded seat supported on a pedestal (the latter being no part of the design claimed), a back, and sides.

We reproduce front, a perspective, and side views of appellants' chair and below them corresponding views of the Saarinen reference chair.

### APPELLANTS

### REFERENCE

Appellants' claim is conventional: "The ornamental design for a chair or the like as shown and described." See Patent Office Rule 153. However, there is no description other than the showing of the drawings.

The Patent Office does not question novelty.

The following excerpts from the Examiner's Answer show his grounds of rejection (emphasis ours):

It is the Examiner's position that the chair disclosed and claimed herein is *substantially similar* in overall appearance to the Saarinen chair and as such it possesses *no patentable merit* thereover.

Applicant's [sic] omission of the peripheral edge employed by Saarinen is noted. However, the omission of this flange is well *within the expected skill of a competent de-*

*signer* and in any event it is insufficient as a basis for patentability.

\* \* \* \* \* \*

Appellant directs attention to the lipped edge of Saarinen, the angle of the side walls and, to the curvature of the back thereof when viewed in side elevation.

These remarks, however, are held to be directed to variations which constitute *differences in minutiae.*
\* \* \*

\* \* \* \* \* \*

Consequently, it is not believed that the difference between the Saarinen chair and the chair disclosed herein can be called *inventive* without defining the term *invention* to be nothing more than the sort of variation to be expected from any ordinarily skillful *mechanic* conversant with the art involved.

The board, in affirming, expressed its reasons in one paragraph, saying:

\* \* \* the over-all similarity between the two designs is so close that the ordinary individual would take them to be mere variations of the same design rather than essentially new or different designs. In re Johnson, 36 CCPA 1175; 1949 C.D. 458; 627 O.G. 911; 175 F.2d 791; 82 USPQ 199, and In re Lamb, 48 CCPA 817; 1961 C.D. 219; 769 O.G. 1051; 286 F.2d 610; 128 USPQ 539.

The patentability of designs is provided for in 35 U.S.C. § 171, the second paragraph of which reads:

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

On the patentability issue, novelty under 35 U.S.C. § 102 not being questioned, the statutory provision which controls here is 35 U.S.C. § 103. Stating the issue in the words of the statute, it is whether \* \* \* the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

It will be noted that section 171 distinguished between "patents for inventions" and "patents for designs," which would seem to indicate a legislative consciousness that "inventions" and "designs" are different in kind. Because they are, the language of section 103, designed to apply to inventions in the field of process, machine, manufacture, and composition of matter (35 U.S.C. § 101), is somewhat difficult to apply to the problem of the patentability of designs.

What is "the art to which the subject matter pertains" in this case? Is it the molded chair "art" or is it the ornamental design "art"? In what field is the "inventor" of the design operating?[1] Since those who create designs are de-

1. The only reason to call the design-creator an "inventor" is the language of 35 U.S.C. § 171, which contains its own problems. It is:

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

This is the problem: "Whoever invents" requires the applicant to have invented the design but this is the same thing as originating it, if "original" is given the meaning of doing it yourself without copying. With that meaning, either the word "invents" or the word "original" is superfluous. However, "original" has another possible meaning—something fresh, striking, or unusual and this clearly implies *novelty* to a considerable degree. If that is what is meant by "original" in the statute, then the word "new" becomes superfluous. Query: if "original" is given the second meeting of "out of the ordinary," then is not the section 171 requirement that the design be "original" redundant with respect to the section 103 requirement for unobviousness? It can scarcely be said that the statutory requirements are clear.

signers, not chair makers, it would seem to follow that he is operating in the field of industrial design and that it is the "art" involved.

The next question, then, is who is a "person having ordinary skill in" this art? In the mechanical, chemical, and electrical "arts" we have distinguished, since Hotchkiss v. Greenwood, 52 U.S. 248, 13 L.Ed. 683 (1850), between "an ordinary mechanic acquainted with the business" and the "inventor"; between the craftsman or routineer on the one hand and the innovator on the other, now, by statute, the innovator who makes *unobvious* innovations. With respect to such inventions, these two categories of persons are workers in the same "art."

In the field of design the analysis is not so easy. Design inventing or originating is done by designers. The examiner here has referred to "the expected skill of a competent designer" as the basis of comparison. However, if we equate him with the class of mechanics, as the examiner did, and refuse design patent protection to his usual work product, are we not ruling out, as a practical matter, all patent protection for ornamental designs for articles of manufacture? Yet the clear purpose of the design patent law is to promote progress in the "art" of industrial design and who is going to produce that progress if it is not the class of "competent designers"? We cannot equate them with the mechanics in the mechanic vs. inventor test for patentability. Correspondingly, we cannot solve the problem here, obviousness, by using for our basis of comparison the inventor class in the field of industrial design.

This court recognized and wrestled with the inherent difficulties of this problem under the old statutes twenty years ago in In re Faustmann, 155 F.2d 388, 33 CCPA 1065, with respect to the "existence of invention" and appreciated that the problem "must necessarily be approached from a different angle."

The codification of the design law provisions in 1952, continuing as it did the statutory provisions for design patents without change in substance (see former statutes R.S. 4929 and 4933), did nothing to alleviate the difficulties. One thing it did do, however, as the examiner seems not to have appreciated, was to abolish as the test whether or not the design is "inventive," substituting the unobviousness test of section 103.

We feel that the test of patentability of an admittedly new design cannot be whether it is no more than a "competent designer" might produce. That would be parallel to saying of a mechanical invention that it is no more than a "competent inventor" might produce. The test must be obviousness, for that is the dictate of section 103, but it must be applied in a way which will implement the legislative intent to promote progress in the field of industrial design by means of the patent incentive. This will not be done by denying patents to everything competent designers produce by the skill of their calling.

■ Following the mandate of section 103, it would seem that what we have to do is to determine obviousness to the ordinary intelligent man. The test is inherently a visual test, for the design is nothing more than appearance, and the appearance is that of the article as a whole. In re Jennings, 182 F.2d 207, 37 CCPA 1023. No special skill is required to determine what things look like, though individuals react differently. It is bound to be an individual reaction.

■ Having studied appellants' and Saarinen's drawings and tried to visualize what their chairs would look like in real life, we have concluded that under the statutory test, applied in the light of the foregoing analysis, appellants' chair design would not be obvious from Saarinen's. True, there is a general similarity in that they are both pedestal chairs with unitary molded seats, with the general features that go with molding a seat to accommodate the human anatomy. But we point out a number of differences, which we think are not properly characterized as "minutiae," legally speaking, the cumulative effect of which

is unquestionably to create a different appearance.

From the front views in the above drawings it will be observed that appellants' general shape gives the impression of an upwardly tapering wine goblet with rounded bottom and straight top. The rear view, not shown here, gives even more of this impression, whereas the reference gives the impression of side arms flaring outwardly and of a narrow back with a concave top line.

The rounded bottom of appellants' goblet shape appears to stand upon the pedestal whereas in the reference the upward flare of the pedestal meets and blends with a downward flare of the seat in one smooth curve forming an integral unit.

The open edges of the reference seat, extending from the top corners of the back to the seat proper, are flared outwardly into arm rests of substantial width. The vertical front edges of the side arms are also flared outwardly. By contrast, appellants' chair has a thin edge providing no arm rests and from the front upper corners of the sides to the seat it curves inwardly, instead of outwardly, giving a closing-in rather than opening-out impression.

Looking at the side views, appellants' front and top edges consist of a pair of concave curves which seem to sweep upwardly to the right and the back has a reverse curve, from the top of the back downwardly, first concave and then pronouncedly convex at the back of the seat. The reference back is almost a straight line with a stiff rather than a form-fitting look, the back and seat bottom forming nearly a right angle.

Perhaps each of these differences by itself is a minor difference, but taken together the net result is a distinctly different appearance. These facts closely resemble those in the recent case of In re McKay, 316 F.2d 952, 50 CCPA 1257, opinion by Judge Martin, wherein we reversed the rejection of an application on a lint remover. We there said:

In the present case, the cleaning implement of Scriminger may have "the same general over-all shape" as appellant's design in the broad sense that both have a generally cylindrical body and a tapered handle attached at its smaller end to the body. However, the two devices are vastly different in the impression they make on an observer. The difference seems to us to have two aspects, one being in a difference in proportions of the elements and the other in particular features of the handle alone.

We found the differences "result in a new and ornamental design which would not be obvious from the prior art."

The previous year we reversed the rejection of a design for a rubber floor tile in In re Bartlett and Fletcher, 300 F.2d 942, 49 CCPA 969, pointing out that we felt the average observer would take the design of the appellants and of the reference to be different designs and might well have a preference for one over the other. We feel the same is true here. We there discussed the *Johnson* case, cited by the board herein. We do not think the facts here any more resemble those in the *Johnson* case than did the facts in *Bartlett*.

The *Lamb* case cited by the board, another of our recent decisions, also is distinguishable on its facts. We there found that the *same* design, which appeared in the prior art for a carving knife handle, had merely been *adapted to suit the size* of a steak knife, the prior art patent being appellant's own. We said, "the most appellant has done is to modify an already existing design in an obvious manner to harmonize with a smaller blade." We do not see how the board could find that decision relevant to the facts here.

The board felt that the ordinary individual would take the two designs here involved to be mere variations of the same design rather than different designs. We do not see how this is possible. One might feel that the two chairs were part of the same style trend, just as com-

peting automobiles or refrigerators or radios seem to follow similar patterns from year to year, but they are, in our opinion, distinctly different designs within that style trend. The design which initiates a new style does not automatically close the field to all other designs within the same style pattern.

The decision of the board is reversed.

Reversed.