**SCHWINN BICYCLE COMPANY,**
Plaintiff-Appellant,

v.

**GOODYEAR TIRE & RUBBER COMPANY, Defendant-Appellee.**

No. 23950.

United States Court of Appeals,
Ninth Circuit.

Dec. 22, 1970.

---

Wm. E. Lucas (argued), Malcolm McCaleb, Chicago, Ill., for appellant.

John M. Calimafde (argued), Michael Ebert, of Sandoe, Hopgood & Calimafde, New York City, Naylor & Neal, San Francisco, Cal., for appellee.

Before BROWNING, WRIGHT and KILKENNY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from a decision of the district court granting summary judgment to defendant-appellee Goodyear on the ground that plaintiff-appellant Schwinn's design patent for a bicycle seat is invalid and, if valid, is not infringed by a similar bicycle seat manufactured by Goodyear. We are in agreement with the district court's determination of invalidity and affirm.

### I. *The Patent in Suit and the Prior Art Advertisement.*

The patent in suit is a design patent, U. S. Patent No. D.204.121. It issued on March 15, 1966, as a result of an application filed on January 15, 1965 by Frank P. Brilando, assigned to the appellant Schwinn. Three views of the patented design are shown in figure 1 hereof.

FIGURE 1

[A4166]

The sole reference relied upon in appellee's motion for summary judgment is a prior art bicycle seat, also manufactured by appellant Schwinn, which is illustrated in an advertisement from the June 1963 issue of *American Bi-*

*cyclist & Motorcyclist,* page 9, reproduced herein as figure 2.

## F I G U R E   2

[A3400]

Appellant Schwinn concedes that this advertisement was published more than one year prior to the filing of the application which ultimately matured into the patent in suit. Schwinn also concedes that bicycle seats of the type advertised were sold in this country more than one year prior to the filing date. The advertisement and the seat illustrated are therefore prior art references under 35 U.S.C. §§ 102(a) (b) and 103 which are made specifically applicable to design patents under 35 U.S.C. § 171. Both the advertisement and the bicycle seat were before the district court during its consideration of the motion for summary judgment.

The file history of the design patent in suit is relatively short and reveals the fact that the Brilando application was initially rejected by the Patent Office. As originally filed, there was some question whether the design included the half loop illustrated in figure 1 hereof. The Patent Examiner rejected the application as unpatentable over the advertisement of figure 2 (referred to in his remarks as the "Schwinn Item") on the ground that "(t)he Schwinn Item discloses a bicycle seat having an overall appearance of striking similarity to that claimed herein. * * * "

Following this rejection, the drawings were modified to include the half loop as part of the design. In his argument to the examiner in favor of patentability, the patentee pointed out certain "functional differences" which were said to be "felt by the observer." Particular emphasis was placed upon the "almost vertically disposed half-loop" of the proffered design as compared to the "horizontally disposed rearwardly extending half-loop" of the bicycle seat shown in the advertisement. This argument was supported by supplementary photographs of the prior art bicycle seat which form part of the file history.

The combination of this argument plus a personal interview with the examiner apparently persuaded him to change his mind because the application was then allowed without further comment.

## II. *The Propriety of Summary Judgment.*

First, it is well established that summary judgment is proper only where the showing made is such that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.Proc. 56(c).[1] There is no serious contention here that there are factual issues which make summary judgment improper. In its motion, defendant relied upon the bicycle seat illustrated in figure 2, one of which was before the district court together with the advertisement and the supplementary photographs that appear in the file history.

It is true that summary judgment is seldom used in patent cases. This is largely a result of the technological problems which ordinarily arise in litigation involving a utility (as opposed to design) patent. In such cases, the trial court often needs the assistance of expert testimony to determine the nature of the patented device as well as the scope and content of the pertinent prior art. There is no such need for expert

---

1. *See, e. g.,* Consolidated Elec. Co. v. United States, 355 F.2d 437 (9th Cir. 1966).

testimony in litigation involving a design patent of this type where no special technological problems are presented and the legal issues, as will be seen hereinafter, are particularly adapted to summary disposition.

We think it quite clear, therefore, that the controversy here was especially susceptible to adjudication on a motion for summary judgment.[2]

### III. *The Validity of the Patent.*

■ In granting Goodyear's motion for summary judgment, the district court ruled that the patent was invalid as fully anticipated by the prior art per 35 U.S.C. § 102 as well as, in the alternative, being obvious under 35 U.S.C. § 103. Appellee does not now rely upon the finding of anticipation, arguing only that the district court was correct in concluding that the patent is obvious. We do not reach the question of anticipation but instead treat only the district court's determination that the design is obvious in view of the bicycle seat illustrated in the prior art advertisement, a conclusion with which we are in full agreement.

■ In order for a design to be patentable, it must be (1) new, (2) original, (3) ornamental, (4) non-obvious, and (5) not primarily for functional or utilitarian purposes.[3] This controversy involves only one of these criteria, i. e., non-obviousness.

The statutory requirement of non-obviousness is found in 35 U.S.C. § 103 which prohibits the patenting of an invention, even though not identically shown in the prior art, if "the differences between the subject matter sought to be patented and the prior art are such

that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The most definitive statement of the requirement of non-obviousness and the approach to be taken by the federal courts in determining this question is found in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." [4]

■ *Graham* involved a mechanical (or utility) patent and some of the language therein does not fit design patent cases with precision. Nonetheless, the statutory criteria of non-obviousness is specifically incorporated into design patent applications by the language of 35 U.S.C. § 171, and we are convinced that the approach of *Graham* is equally applicable where the question is the obviousness of a design patent.[5]

#### A. *The Prior Art.*

Little needs to be said about the prior art involved here since the motion for summary judgment was predicated solely

2. *See* Barofsky v. General Electric Corp., 396 F.2d 340 (9th Cir. 1968), cert. denied 393 U.S. 1031, 89 S.Ct. 644, 21 L. Ed.2d 575 (1969) ; Monaplastics, Inc. v. Caldor, Inc., 378 F.2d 20 (2d Cir. 1967).

3. Barofsky v. General Electric Co., *supra* n. 2, 396 F.2d at 342.

4. Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684 (1966).

5. *See* Blumcraft of Pittsburgh v. Citizens & Southern Nat'l Bank, 407 F.2d 557 (4th Cir. 1969), cert. denied 395 U.S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969) ; Hadco Products, Inc. v. Lighting Corp. of America, 312 F.Supp. 1173 (E.D.Pa.1970).

upon the bicycle seat as illustrated in figure 2. Because of the test for obviousness of design patents (*See* III, C, *infra*), a literal description of the visual image presented by the prior art involved here is unnecessary.

### B. *Differences Between the Prior Art and the Claims at Issue.*

■ Since this is a design patent there is but a single statutory claim which provides that the invention claimed is "the ornamental design for a bicycle seat, as shown and described." By the same token, it seems inappropriate to discuss in detail the differences between the patented design and the prior art since those differences relate to individual elements and their specific functions. Undue reference to such differences in a design patent case seems to us to lead to improper emphasis on particular aspects of a design when the proper test is the impression created by the overall appearance.[6]

Nevertheless we think it appropriate to point out some of the differences which are not apparent [7] from the single view of figure 2. Borrowing the language which the patentee himself used in his negotiations with the Patent Office following the initial rejection, we note that the prior art bicycle seat is "relatively flat" and somewhat "broader than the [patented] design" with a "substantially horizontally disposed rearwardly extending half-loop." This is to be compared to the patented design which "curves upwardly toward the rear" and has "an almost vertically disposed half-loop."

### C. *Level of Ordinary Skill in the Art.*

■ In design patent cases, there has been some confusion as to the appropriate method of determining the level of ordinary skill in the art. *See* In re Laverne, 356 F.2d 1003, 53 CCPA 1158 (1966). In *Laverne,* the Court of Customs and Patent Appeals (which has the responsibility of deciding numerous cases from the Patent Office regarding the patentability of designs), rejected the suggestion that the pertinent inquiry was to the "expected skill of a competent designer" and re-affirmed its view that the determination must be "obviousness to the ordinary intelligent man." [8]

We think this is the appropriate measure and one which has substantial historical backing. Over 70 years ago, the Supreme Court stated the test thus:

> "The test is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." Smith v. Whitman Saddle Co., 148 U.S. 674, 680, 13 S.Ct. 768, 770, 37 L.Ed. 606 (1893).

### D. *Inquiry into Obviousness.*

In light of the three foregoing criteria, we are now compelled to conclude that there is such a substantial similarity in overall appearance between the patented design and the prior art relied upon here as to make that design obvious within 35 U.S.C. § 103.

We are not unaware that this determination is largely subjective and susceptible of individual differences and in-

6. *See, e. g.,* In re Bigelow, 194 F.2d 550, 39 CCPA 835 (1952).

7. The fact that these differences are not apparent from the advertisement does not mean, as suggested by appellant, that there is any genuine issue as to material fact. The district court had the advertisement, the supplementary photographs from the file history and an exemplary bicycle seat of the prior art type during its consideration of the motion for sum-

mary judgment. Further, the fact that its finding regarding invalidity refers to the "prior advertisement" does not mean that it relied upon the advertisement alone since we think this phrase merely a shorthand way of designating the prior art which included the advertisement as well as the product advertised.

8. In re Laverne, 356 F.2d 1003, 1006, 53 CCPA 1158 (1966).

terpretations. However, "the determination of patentability in design cases must finally rest on the subjective conclusion of each judge." [9] following the approach specified in Graham v. John Deere Co., *supra,* we think that this design is obvious in overall appearance when viewed through the eyes of the ordinary observer.

### E. *Secondary Considerations.*

Appellant has introduced substantial evidence of acceptance of its design as well as the commercial success thereof. We note, for example, that some 25 parties have been charged with infringement at varied times and the charges resulted in agreements not to infringe or, in about four or five instances, agreements to pay royalties under a license from Schwinn.

Reference need be made to such secondary considerations only when the question of obviousness is uncertain and inquiry into the "circumstances surrounding the origin of the subject matter" become of importance.[10] We do not think there is such uncertainty here.[11]

It is also relevant to mention other factors, in addition to alleged inventiveness, which might have contributed to the acceptance in the market place and commercial success relied upon by appellant Schwinn. We are not unmindful of the position of Schwinn as a national leader in the design and manufacture of bicycles. In a four-year period (1964–68), Schwinn sold over 1,200,000 of the patented bicycle seats, either as original or replacement equipment. Without undue inquiry into the field of consumer psychology, we think it evident that the sponsorship of this particular design by a company like Schwinn may be largely responsible for the success of the design.

We note also that Schwinn has apparently licensed its competitors to manufacture and sell the patented design for the relatively moderate royalty rate of five cents per unit. While we think it somewhat inappropriate to conjecture as to a reasonable rate for this product, we do not believe that the royalty was so significant as to offer any substantial economic reason to contest the validity of the patented design.

■ We are not suggesting, of course, that there is anything even remotely improper about good faith charges of infringement followed by patent licenses at a relatively moderate royalty. What we are saying is that the mere existence of these licenses does not, under these circumstances, add materially to establishing inventiveness on the ground of commercial success.

### F. *Presumption of Validity.*

Finally, we are referred to the fact that 35 U.S.C. § 282 provides that "a patent shall be presumed valid." We are also aware that the presumption of validity is said to be strengthened when, as here, the prior art relied upon to establish invalidity has been fully considered by the Patent Office.[12]

The importance of having the prior art considered by the Patent Office is, of course, founded in large part upon the expertise of that office, particularly in complex utility patents where technical skill is necessary to evaluate fully the scope and content of the prior art. That expertise is not, however, of special weight in this setting since there is no substantial need for technical knowledge involved in the determination of the similarity of two designs in the "eyes of the ordinary observer." Our eyes view this matter as did the district court's and though strengthened by the considerations of the Patent Office, the presumption of § 282 is far from conclusive and

9. In re Bartlett, 300 F.2d 942, 944, 49 C.C.P.A. 969 (1962).

10. Graham v. John Deere Co., *supra* n. 4, 383 U.S. at 18, 86 S.Ct. at 694.

11. *See also* Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541 (9th Cir. 1967); Bentley v. Sunset Distributing Corp., 359 F.2d 140 (9th Cir. 1966).

12. Neff Instrument Corp. v. Cohu Electronics, Inc., 298 F.2d 82 (9th Cir. 1961).

does not permit the patentee to prevail here.[13]

### IV. *Conclusions.*

We conclude that the design patent involved here is invalid for obviousness under 35 U.S.C. § 103. The district court's grant of summary judgment is affirmed on this ground alone.

Having determined that the patent is invalid, an appellate court need not make further inquiry into the question of infringement and none is made here.[14]

Affirmed.

---

13. *See* Trenton Industries v. A. E. Peterson Mfg. Co., 165 F.Supp. 523 (S.D.Cal. 1958).

14. *See* Bliss v. Gotham Industries, 316 F.2d 848, 851 (9th Cir. 1963); Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541 (9th Cir. 1967).