**HADCO PRODUCTS, INC.**

v.

**WALTER KIDDE & COMPANY,**
Appellant.

No. 19068.

United States Court of Appeals,
Third Circuit.

Argued April 2, 1971.

Decided June 16, 1972.

---

4.  10 U.S.C. § 3661 (repealed in 1968; for present analogue see 10 U.S.C. § 951(c)).

Arthur H. Seidel, Seidel, Gonda & Goldhammer, Philadelphia, Pa., for appellant.

Henry N. Paul, Jr., Paul & Paul, Philadelphia, Pa., for appellee.

Before FORMAN, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the Eastern District of Pennsylvania of May 5, 1970 adjudging Design Patent

199,143 valid and infringed [1] by the appellant, Walter Kidde & Company, Inc. (Kidde).[2] The patent was issued to Howard A. Daum, who assigned it to the appellee, Hadco Products, Inc., (Hadco) a Pennsylvania corporation.

The patent in question is for a lighting fixture or lantern represented to be of Old English style, and advertised and sold as the "Tudor" by Hadco. It consists of a base, a cage, a roof, a vent cap, and a finial as shown in the reproduction of the patent appended hereto.

The cage rests on a concavely-shaped cylindrical base, and forms a regular hexagon, which becomes wider as it ascends from the base to the roof. The roof in turn carries out the hexagonal design of the cage, curving inward and upward from the cage. Placed over the roof, the vent cap follows the inwardly curving silhouette of the roof and is also hexagonal. The bottom of both the roof and the vent cap flare out horizontally in a scalloped design topped with small triangular accents. The flared portion of the roof overhangs the cage as the equivalent portion of the vent cap overhangs the roof. In addition, the roof is decorated with six simulated ventilators, which are curved to its silhouette. At the top of the vent cap, a spike-shaped finial is set on a round, concave base.

This lighting fixture was conceived and designed by the patentee, Howard A. Daum, early in 1962, and appeared on the market through Hadco in August of that year. On April 25, 1963, he filed an application for a design patent. The application was amended three times [3] to make some changes and additions in the design, and a patent was issued by the Patent Office on September 15, 1964. It is conceded that the patent issued with several technical errors of draftsmanship.[4] Kidde began to sell the fixtures held to infringe the Daum patent in February of 1964.

All of the constituent parts of the Hadco lighting fixture are old and well known in the trade. Hadco concedes that the lantern is composed of a combination of elements commonly known and extensively used in the prior art. It argues, however, that the particular combination embodied in the "Tudor" design creates an unusual and aesthetically pleasing visual impression which is lacking in the prior art and discloses the lighting fixture as a novel work of creativity and inventiveness. Along this line, Hadco contends that the lantern fulfilled a long-felt but unsatisfied need for such a fixture in the industry. Here, as in the District Court, Hadco relies heavily on public acceptance of the light-

---

1. The Opinion of the District Judge is reported as Hadco Products, Inc. v. Lighting Corporation of America, Inc., 312 F. Supp. 1173.

2. The appellee originally brought this action against the Lighting Corporation of America, Inc., a Pennsylvania corporation which had operated under the trade name of Progress Manufacturing Company until 1966 and was referred to as such by the District Judge in his opinion. After suit was instituted, the Lighting Corporation of America, Inc. merged with Walter Kidde & Company, Inc., a Delaware corporation, thereafter substituted as defendant-appellant herein.

3. The Patent Office did not require Mr. Daum to file a supplemental oath on his amendments which is necessary "[w]hen an applicant presents a claim for matter originally shown or described but not substantially embraced in the statement of invention or claim originally presented

. . . ." 37 C.F.R. 1.67(a). This implies that the Patent Examiner found the matter introduced by the amendments to be substantially embraced in the statement of invention. The addition of new matter to the disclosure of an invention by means of amendment is expressly prohibited under 35 U.S.C. § 132.

4. Among the errors alleged in the patent as issued were the following: the front view of the lighting fixture disclosed five simulated ventilators on the cage, whereas only three should appear if it represented a regular hexagon; the top view showed the simulated ventilators fully exposed, whereas they should be partially covered by the flaring, scalloped edge of the vent cap; and the triangular accents on the roof were of the same height in both the front and top views of the fixture, whereas the accents on the top view should have been smaller due to the principle of foreshortening.

ing fixture, evidenced by the alleged great commercial success it has enjoyed, as proof of its originality, novelty and fulfillment of a long-felt need.

■■ At the outset it is noted that the applicable standard of review in patent infringement cases is ordinarily the "clearly erroneous" test mandated by F. R.Civ.P. 52(a).[5] An exception to this rule occurs where the evidence is purely documentary in nature, or where the court actually views the object or device in operation.[6] Kidde here introduced documentary evidence of the state of the prior art and thus contends that this case falls within the above exception. The record clearly shows, however, the introduction of a substantial quantity of oral testimony and physical exhibits in addition to such documents, upon which the District Judge relied, and upon which both parties rely on this appeal. In such circumstances, where findings rest "upon a blending of documentary evidence and oral testimony," the clearly erroneous test is the appropriate standard of review.[7]

■ On the other hand, the ultimate question of patent validity, including a determination of the obviousness or non-obviousness of the subject matter of a patent, is not subject to the limitations on review under Rule 52(a). Although resting on a factual background, "the question of validity of a patent is a question of law"[8] reviewable free of the clearly erroneous test.

The District Judge found the patent valid over Kidde's defenses of obvious-ness, insufficient and indefinite disclosure of the design, addition of new matter, failure to file a supplemental oath, acquisition of intervening rights, double patenting and late claiming.[9] Except for the last two-mentioned objections, Kidde repeats the same contentions here, and urges that if the standard of patentability applied by the District Judge was proper, then that standard is unconstitutional.

Provision for the patentability of designs is found in 35 U.S.C. § 171, which states:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

One of these requirements is set out in 35 U.S.C. § 103, which provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

---

5. Jiffy Enterprises, Inc. v. Sears, Roebuck & Co., 306 F.2d 240, 243 (3 Cir. 1962), cert. den. 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230 (1962); R. M. Palmer Company v. Luden's, Inc., 236 F.2d 496, 498 (3 Cir. 1956).

6. Reese v. Elkhart Welding and Boiler Works, Inc., 447 F.2d 517, 520–521 (7 Cir. 1971); Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1229–1230 (7 Cir. 1969), cert. den. 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970).

7. La Salle Street Press, Inc. v. McCormick and Henderson, Inc., 445 F.2d 84, 87 (7 Cir. 1971).

8. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 155, 71 S.Ct. 127, 132, 95 L.Ed. 162 (1950); Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc., 450 F.2d 1164, 1174 (3 Cir. 1971).

9. Kidde accompanied its answer with a counterclaim for a declaratory judgment of the patent's invalidity on the same grounds submitted as defenses in its answer.

■■ This court has held that a design, to be patentable, must be new, original, ornamental and nonobvious to a worker of ordinary skill in the art to which the design pertains.[10] And, in determining the validity of a design patent, it is the appearance of the article taken as a whole which must meet the statutory requirements since it is "the appearance itself . . . that constitutes . . . the contribution to the public which the law deems worthy of recompense."[11] Beyond this, the law which governs patents does not differ from that generally applicable to other types of inventions.[12]

In Graham v. John Deere Co.,[13] the Supreme Court discussed the method of judicial application under § 103, stating that:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obvious-

ness or nonobviousness, these inquiries may have relevancy."[14]

With the addition of § 103 to the Patent Act of 1952, the Congress expressed its intent to shift judicial focus in determining the validity of patents by "emphasiz[ing] 'nonobviousness' as the operative test of the section, rather than the less definite 'invention' language"[15] previously utilized by the courts, which had led to a considerable divergence in decisions.

■■ Under this approach, it is clear that mere distinctions between the design and the prior art are insufficient to warrant a patent. Thus, even where the subject matter of a patent may be different from and unlike the prior art, or "new and pleasing enough to catch the trade," it may not be patentable.[16] Under § 103 it must be determined that the differences between the prior art and the subject matter of the patent are nonobvious to a worker of ordinary skill to justify the issuance of a patent. The courts are bound to a "strict observance" of this rigorous standard.[17]

■ Where, as in the present case, a combination patent is involved, additional aspects of nonobviousness come into play. The court must "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."[18] Such a pat-

10. Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3 Cir. 1968); R. M. Palmer Company v. Luden's, Inc., 236 F. 2d 496, 500 (3 Cir. 1956).

11. Gorham Company v. White, 14 Wall. 511, 525, 20 L.Ed. 731 (1871); Methode Electronics, Inc. v. Elco Corp., 385 F.2d 138, 141 (3 Cir. 1967).

12. Rains v. Niaqua, Inc., 406 F.2d 275, 276 (2 Cir. 1969), cert. den. 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969); Amerock Corp. v. Aubrey Hardware Mfg., Inc., 275 F.2d 346, 348 (7 Cir. 1960).

13. 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

14. Id. at 17–18, 86 S.Ct. at 694.

15. Id. at 14, 86 S.Ct. at 692.

16. Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 618 (2 Cir. 1962); In re Lamb, 286 F.2d 610, 611, 48 CCPA 817 (1961).

17. Graham v. John Deere Co., note 13 supra, 383 U.S. at 18, 86 S.Ct. 684. This standard, of course, neither diminishes the presumption of validity which attaches to a patent, Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 (1934), nor lessens the burden of the party challenging a patent to prove its invalidity. Eagle Iron Works v. McLanahan Corp., 429 F.2d 1375 (3 Cir. 1970).

18. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

ent must create a synergistic effect, one in which the combination of elements results "in an effect greater than the sum of the several effects taken separately." [19]

After discussing the rules relating to obviousness as set out in § 103 and *John Deere, supra,* the District Judge determined the level of skill of the ordinary worker in the art and the scope of the prior art, specifically scrutinizing in some detail six multisided lighting fixtures which were submitted in evidence by Kidde and were formed from the same components as the patent in suit. He found that:

> "the level of ordinary skill in the art included the ability to design different lighting fixtures of somewhat varying styles having as their component elements a base, a cage, a roof, a vent cap, and a finial. Hexagonal cages of the type employed by Daum were known and commonly employed by other lighting fixture designers a number of years prior to the filing of his application for the patent in suit. Also, roofs corresponding in number of sides to the cage and exhibiting simulated ventilators set out from each panel thereof were a known quantity in lighting fixture design more than a year before the filing of this patent application. It is further true that such roofs were often conical in shape. Moreover, vent caps were commonly superimposed on the roofs of lighting fixtures, paralleling them in some aspects of design. Lastly, the devices of a finial and base were routinely used to complete the design and give it a sense of balance." [20]

The District Judge went on to discuss the differences between the patent in issue and the prior art, but nevertheless found that the Daum lighting fixture displayed many characteristics which set it apart from the prior art. Specifically, he found that:

> " . . . the overall proportions and contour of the Daum patent provide a sharp contrast to both the 'squatty' and 'elongated' designs included in the prior art. (footnote omitted) In addition, the former conveys a subtle sense of simplicity and gracefulness. Such is lacking in the prior art which is characterized, for the most part, by a look of formality and austerity quite foreign to the Daum design. (footnote omitted)

> \*   \*   \*   \*   \*   \*

> "Significant differences of a more specific nature exist between the patent in suit and the prior art. The smooth curve of its finial and vent cap, and especially of its roof, combine to produce in the Daum patent a 'Christmas tree' effect not found in the prior art. (footnote omitted) In addition, the sinusodially curved edges of the Daum roof, integrated with the triangular accents and scallops on the upper surfaces of the eaves, create a visual impression which is substantially different from and unanticipated by any combination of items of the prior art. (footnote omitted)" [21]

The District Judge concluded that these differences "when taken together, make [the Hadco fixture] nonobvious to a person of ordinary skill in the art," [22] on the reasoning that:

> "Recently the Supreme Court was called upon to interpret the statutory test for nonobviousness in a series of non-design cases. (footnote omitted) Much of what was said in those cases is difficult to apply in design cases because of the inherent differences between design and non-design patents. (footnote omitted) The requirement of advancement, present in the constitutional standard of patentabil-

19. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969); United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

20. Hadco Products, Inc. v. Lighting Corporation of America, Inc., note 1 *supra,* 312 F.Supp. at 1177.

21. *Id.* at 1178.

22. 312 F.Supp. at 1177.

ity, (footnote omitted) seems to have far less practical application in design cases. Moreover, if the Constitution requires that a patent advance or add to the sum of useful knowledge, how can any design patent be constitutional? For, how can a design add to the sum of useful knowledge when a disclosure is merely an artist's view of the device and the patent protection runs only to the ornamental features of the article and not the article itself? (footnote omitted) *On the other hand, if merely a change in design is thought to satisfy the requirement of adding to the sum of useful knowledge, then the only test of patentability in a design case is novelty.* Some writers have suggested as much. (footnote omitted) In addition, the frame of reference with respect to the issue of obviousness in mechanical patent cases is utility, a concept admitting of essentially one definition. This is so because it is defined in terms of the common needs of the members of society. *On the other hand, ornamentation or aesthetic appeal, the frame of reference in design patent cases, is largely a matter of personal taste which varies from individual to individual. Thus, one's feelings and conclusions about a design are to a considerable extent subjective.*[23] (Emphasis supplied.)

Thus, while the District Judge noticed the test of obviousness to the worker of ordinary skill in the art, his reasoning and conclusion on the issue were actually based on subjective visual impressions. In this respect apparently he was influenced by the reasoning and test of obviousness enunciated in In Re Laverne.[24] In that case, the court found that it could not "implement the legislative intent to promote progress in the field of industrial design by means of the patent incentive"[25] by determining obviousness in terms of the worker of ordinary skill in the art. It substituted a test of obviousness to the ordinary intelligent man, stating that such a test is:

"inherently a visual test, for the design is nothing more than appearance . . . No special skill is required to determine what things look like, though individuals react differently. It is bound to be an individual reaction."[26]

This test was followed recently by the Ninth Circuit in Schwinn Bicycle Company v. Goodyear Tire & Rubber Company.[27] There, on the question of obviousness, the court concluded that " 'the determination of patentability in design cases must finally rest on the subjective conclusion of each judge.' "[28]

■ These decisions appear to equate obviousness with novelty in the case of design patents. They pose the proposition that unlike a mechanical patent, a design patent should not be tested for obviousness by the yardstick of "a person having ordinary skill in the art," notwithstanding that specific criterion appears in § 103. They reason that the very nature of the subject matter of the design dictates no greater requirement than that the difference between the prior art and the subject matter sought to be patented be obvious to the "ordinary intelligent man" or the "ordinary observer."

The statutory scheme of equating the requirement of nonobviousness of a design patent with that of a mechanical patent renders the decision-making process far from simple, as is highlighted by the philosophical theories enunciated in

23. *Id.*, at 1177–1178.

24. 356 F.2d 1008, 53 CCPA 1158 (1966). The District Judge cited this case, and a law review article discussing its implications. 312 F.Supp. at 1177 n. 5 and 1178 n. 8.

25. 356 F.2d at 1006.

26. *Id.*

27. 444 F.2d 295 (9 Cir. 1970).

28. *Id.* at 300, accord, In re Facer, 442 F. 2d 976 (C.C.P.A.1971) ; In re Schilling, 421 F.2d 747 (C.C.P.A.1970) ; *but see* In re Durfee, 412 F.2d 878 (C.C.P.A.1969) ; In re Lustig, 368 F.2d 1019, 54 C.C.P.A. 840 (1966).

*Laverne, supra,* and *Schwinn, supra.*[29] And the complexity of current marketing practices may well call for a review of the law governing patents, both mechanical and design, but any basic change in present standards and requirements should be by appropriate legislative reform rather than judicial fiat.

While this court has held that the test of the "ordinary observer" is to be utilized in determining the novelty and ornamentality of a design,[30] it has not departed from the traditional standard of obviousness to a worker of ordinary skill in the art. Thus far, this standard has been deemed appropriate to implement the congressional intent behind § 103, as emphasized in the statement that:

> "the section is added to the statute for uniformity and definiteness. This section should have a stabilizing effect and minimize great departures which have appeared in some cases." [31]

In this light, we are confronted with the question of whether the differences found by the District Judge between the Hadco fixture and the prior art support the conclusion that the design is nonobvious when viewed under the mandate of § 103.

The file wrapper [32] discloses that the Patent Office cited three items of the prior art: two ornamental lighting fixtures, Nos. 1605 and 10576, from the catalog of Meierjohan-Wengler, dated 1953; and design patent No. 77,196 of W. Underwood, dated 1928. These lighting fixtures are six-sided and formed from the same components as the Hadco fixture, except that the Meierjohan-Wengler lanterns lack vent caps, and Nos. 1605 and 77,196 do not show simulated ventilators. The Underwood lighting fixture projects considerably less formality than the Meierjohan lanterns, which are designed for religious buildings. The cited art is unimpressive in overall appearance for comparison with the Hadco lighting fixture. It is of such limited quantity as to provide little aid on the question of obviousness.

Hadco and Kidde, on the other hand, submitted numerous examples of the prior art in the District Court, none of which were cited by the Patent Office.[33] Of these, the District Judge found it necessary to consider six, Kidde's Items No. 3, 6, 7, 16, 19 and 21(A). A detailed description was devoted to each, which would support a finding of facial distinctions between the Hadco lantern and the prior art, as determined by the District Judge on the basis of his visual impressions.[34] But an ultimate conclusion of nonobviousness required an objective finding that similarity of appearance was so lacking in the prior art as to render the Hadco design as a whole nonobvious to a worker of ordinary skill.

Examining the prior art to this end, it is apparent that substantial similarities to the Hadco fixture's overall contour, appearance, and distinguishing characteristics are present therein. Kidde's Item No. 5, Nos. 469,[35] 470, and 0472, displays lighting fixtures which are quite similar to the Hadco fixture in overall silhouette and contour.[36] These fixtures are four rather than six sided. Almost identically to the Hadco lantern, however, the roofs, though they appear round rather than hexagonal, curve inwardly as they rise, and flare out horizontally

29. See Michaelson, Design Patents and Obviousness—Obvious to Whom?, 13 IDEA 495 (1969); Note, Design Protection—Time to Replace the Design Patent, 51 Minn.L.Rev. 942 (1966).

30. Rains v. Cascade Industries, Inc., 402 F.2d 241, 247 (3 Cir. 1968).

31. S.Rep.No.1979, 82d Cong., 2d Sess. 6 (1952).

32. Pl.Ex. 128.

33. Where it is shown that pertinent items of the prior art have not been considered by the Patent Office, the presumption of validity attaching to the patent is weakened. Chemical Construction Corp. v. Jones & Laughlin Steel Corp., 311 F.2d 367, 371 n. 1 (3 Cir. 1962); Dole Refrigerating Company v. Amerio Contact Plate Freezers, Inc., 265 F.2d 627, 629 (3 Cir. 1959).

34. 312 F.Supp. at 1176–1177.

35. This lantern was considered by the District Judge in Item No. 6, which is a photographic enlargement thereof.

36. Herwig Catalog 60, p. 17 (1958) (Def. Ex. 139).

over the cages at their lower edges, terminating in a rippled design. Except for being four sided, the cages also are virtually identical to that of the Hadco fixture in contour of silhouette. While vent caps and simulated ventilators are absent, the lack of these details does not diminish the substantial similarity of these lanterns to the Hadco fixture in overall contour.

The same findings are applicable to Kidde's Item No. 2,[37] which portrays a six-sided lantern affixed outside a residential dwelling. The ribs of the cage ascend upwardly and outwardly toward the roof. It in turn carries out the hexagonal design, curving inward and upward substantially like Hadco's lantern, and is topped with a finial. The lower edge of the roof flares out slightly over the cage and appears to terminate in a scalloped design. As in the case of Nos. 469, 470, and 0472 in Item No. 5, *supra,* this lighting fixture does not have simulated ventilators and a vent cap. In addition, the submitted photograph of the fixture is small, and renders a finely detailed comparison of it with the Hadco lantern difficult. Nevertheless, the basic identity of contour and overall appearance between this lighting fixture and the Hadco is apparent.

An overall similarity to the Hadco lighting fixture in appearance and contour is also found in Kidde's Item No. 13, No. 466.[38] This is also a six-sided lantern. The ribs of the cage ascend outwardly to the roof, which in turn curves inwardly much like the Hadco as it rises to a spike-shaped finial set upon it. It overhangs the cage slightly at its lower edge. This lantern lacks simulated ventilators and a vent cap. The lower edge of its roof does not flare into a scalloped design, but instead terminates in a sheer vertical cut. It is placed upon a thick, inwardly curving hexagonal base which projects a somewhat formal appearance. But, again, these differences do not detract from the similarity of overall contour and silhouette between this lighting fixture and the Hadco lantern.

The representation of similarity in appearance between the Hadco fixture and items of the prior art concededly does not deny the existence of differences. However, while distinctions in detail may sustain a design as novel, they lose significance in establishing nonobviousness, since the primary focus of inquiry in determining design patentability is upon the appearance of the design as a whole.

The stylistic details of the Hadco lighting fixture, which both Hadco and the District Judge emphasized to show nonobviousness in the design, also have parallel examples in the prior art. Items of the prior art, several of which were considered by the District Judge, variously display cages substantially similar to the Hadco fixture,[39] roofs and vent caps which carry out the same six-sided, inwardly curving pattern as the Hadco lighting fixture,[40] simulated ventilators which follow the contour of the roof,[41] and accented scalloped designs embellishing the vent caps or roofs.[42] None of

37. Novelty Lighting Corp. Catalog 55, p. 17 (1940) (Def.Ex. 142).

38. Novelty Lighting Corp. Catalog 49, p. 58 (1935). (Def.Ex. 146).

39. Item No. 3, No. 1421, Progress Catalog 40, p. 26 (1946) (Def.Ex. 80) considered by the District Judge; Item No. 17, No. 368, Novelty Lighting Corp. Catalog 49, p. 73 (1935) (Def.Ex. 146) ; Item No. 18, Metrolite Exterior Lighting Equipment Catalog 8, p. 20 (1937) (Def.Ex. 141) ; Item No. 22, No. 363, Gruber Brothers Three "G" Lighting Catalog 35, p. 25 (1935) (Def.Ex. 143).

40. Item No. 7, photograph of a fixture installed at St. James Lutheran Church, Phila., Pa. (Def.Ex. 177), considered by the District Judge; Item No. 16, photograph of a Hadco lantern sold in 1961 (Def.Ex. 55), considered by the District Judge.

41. Item No. 21(A), photograph from Metalwork Scrapbook (Def.Ex. 184), considered by the District Judge.

42. Items No. 7, 16, note 40, *supra*; Item No. 19, Nos. 066, 067, Gruber Brothers Three "G" Lighting Catalog 35, p. 18 (1935) (Def.Ex. 143).

these features are identically like those of the Hadco lantern. Nevertheless, the components of the Hadco lantern are clearly recognizable as simple modifications.

■■■ It is basic that the patentee, as a designer, is chargeable with a comprehensive knowledge of this prior art.[43] And it is implicit in the field of lantern designing that this includes a knowledge of lighting fixtures in terms of their overall appearance, individual components, varying styles, and methods of combination to fit different settings. Kidde's expert witness, Robert Stith, a designer of long experience, testified to the intimate familiarity of the lighting fixture designer with these elements. He stated that scalloped or rippled borders with indented triangular accents were frequently placed on the lower edges of roofs and vent caps; that vent caps were commonly designed to follow the contour of the roofs; and that it was common practice for designers to modify or reassemble the basic components of lanterns in various patterns, substituting curved or straight roofs, and adding or deleting simulated ventilators, vent caps and finials to suit customers' tastes.[44] Although much of this testimony was directed to the demands of custom design, the same process—reassembling and restyling well-known components—remains fundamental to the production of "ready made" lighting fixtures produced by the substantial number of present day manufacturers, as prolifically represented in their catalogs in evidence.

Applying this reasoning to the present case, it was to be expected that in producing a new lighting fixture the patentee, as a designer, might retain or delete elements such as a vent cap and simulated ventilators, and vary the ar-

tistic details of the components, such as the size and shape of the cage, the contour of the roof and vent cap, and the extent and stylization of scallops and accents on the roof and vent cap. But under § 103 considerably more than such novelty as might result from this exercise of designing skill is required to warrant a patent.

■■■ As Hadco contends, and the District Judge found, the Hadco lighting fixture does not duplicate any individual item of the prior art. We readily agree that it is indeed novel and pleasing to the eye. However, as was recently observed regarding a design patent in Frantz Mfg. Co. v. Phenix Mfg. Co.:[45]

> "The purpose of the [Patent] statute is to reward, and thereby to encourage, creative artistic activity rather than mere changes of detail which may produce 'novelty' but do not reflect 'invention.'"

In R. M. Palmer Co. v. Luden's, Inc.[46] this court sustained a design patent where the patentee had created fanciful, exaggerated caricatures of hollow chocolate animals in a field that had hitherto seen only realistic animal reproductions in chocolate. The court found that the new designs created a "substantially different aesthetic effect" and "reflect[ed] originality born of inventive faculty."[47] When viewed in light of the prior art, the Hadco lighting fixture, on the contrary, appears simply as an attractive variation on a well-played theme. It does not project the synergistic effect necessary to sustain a patent for a design which is a combination of old and well-known elements. The differences in the Hadco lantern do not create such a new and unexpected result in the appearance of the lighting fixture as a whole as to be

---

43. Continental Can Company v. Crown Cork & Seal Company, 415 F.2d 601, 603 (3 Cir. 1969), cert. den. 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970).

44. Mr. Stith's testimony begins at vol. 3, p. 913a of the Joint Appendix.

45. 457 F.2d 314 (7 Cir., March 16, 1972).

46. 236 F.2d 496 (3 Cir. 1956).

47. Id. at 501. In the recent case of Trio Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66 (3 Cir., May 22, 1972), clearly distinguishable from the present case, this court sustained a process patent which consisted of a combination of steps known in the art, reasoning that,

a product of invention or of a skill beyond that of the ordinary designer in the art.

Hadco also contends, and the District Judge determined, that the presence of secondary considerations supported the conclusion of nonobviousness. The District Judge found that Hadco's lantern was adaptable to many different indoor and outdoor settings and that Kidde "made no attempt to show that any item of the prior art is or was similarly adaptable." [48] In addition, he considered as an important element the responses Kidde received to inquiries it had addressed to other leaders in the field of lighting fixture manufacture, except for Hadco, as to whether they were producing or knew of a design similar to the Daum patent. The responses were said to be uniformly negative.

Finally, the District Judge emphasized the allegedly outstanding commercial success of the lighting fixture and satisfaction of a long-felt need for such a lantern in the industry as proof of its nonobviousness.[49] This commercial success was attributed to the intrinsic merit of the design rather than advertising expenditures, which were found to be quite reasonable.

Under the mandate of *John Deere, supra*, this court has given measured weight to secondary considerations such as commercial success, the opinion of other manufacturers in the pertinent art, and the fulfillment of longfelt need.[50] In determining the validity of a design patent, however, the primary target of inquiry remains the design itself, and the presence of secondary factors " 'without invention will not make patentability.' " [51] Having concluded that

"the essence of the *Spitz* invention did not lie in the individual steps, but rather, consisted of combining the steps in an unsuggested manner into a process that would achieve a substantially different function and result from the other processes of which the individual stages were a part. (footnote omitted). Where such occurs, the invention of a process may be patentable despite the fact that the individual phases were known in the art."

48. 312 F.Supp. at 1178.

49. On these issues the District Judge found as follows:

"From the time it was placed on the market, the patent in suit gave evidence of satisfying something that was apparently needed in the industry. Surprisingly enough, although the 'Tudor' exhibited a traditional old English appearance, it proved suitable for use in many different geographic and environmental settings. Sales data prepared by the plaintiff (footnote omitted) show that the 'Tudor' became so popular with the purchasing public that in a short time it outstripped all other lighting fixtures made by Hadco. Sales of the 'Tudor' continued upwardly in increasing amounts to and through 1968–1969. In fact, by fiscal year 1967–1968, sales of that fixture adapted for electric lighting accounted for 18% of all catalog electric sales and 13% of the total electric sales of Hadco. The cumulative total of such sales in a six year period amounted to 29,805 units. (footnote omitted).

"Shortly after the Hadco 'Tudor' came on the market, customers of the defendant called upon it to add a similar fixture to its line. With the use of an actual Hadco fixture, the defendant designed and introduced into its line the fixtures alleged to infringe. The amazing similarity in detail between the plaintiff's and defendant's fixtures attests to the substantial impact of the Daum design upon the industry. (footnote omitted).

"Notwithstanding the imitation of plaintiff's design by the defendant and others, and the further fact that the fixtures here alleged to infringe have enjoyed unusual success, (footnote omitted) sales of the Hadco 'Tudor' have continued to rise. This is so even though the accused fixtures are sold at lower prices than are the Hadco fixtures (footnote omitted) and sometimes in the same stores or through the same distributors." 312 F.Supp. at 1179.

50. Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronic Industries, Inc., 450 F.2d 1164, 1174 (3 Cir. 1971); Frank W. Egan & Company v. Modern Plastic Machinery Corp., 387 F.2d 319, 324 (3 Cir. 1967), cert. den. 391 U.S. 966, 88 S.Ct. 2036, 20 L.Ed. 2d 879 (1959).

51. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969); E. J. Brooks Company v. Stoffel Seals Corp., 266 F.2d 841, 844 (2 Cir. 1959).

the design itself is not a product of invention, it cannot be sustained as non-obvious on the basis of other secondary considerations. "Where . . . invention is plainly lacking, commercial success cannot fill the void."[52]

On this disposition of the case, resolving the underlying issue of patentability against the claims of Hadco, the many other issues raised by Kidde require no further discussion.

The judgment of the District Court filed May 5, 1970 will be vacated and the cause remanded for entry of a judgment denying relief on the complaint of Hadco Products, Inc., and adjudicating its Design Patent No. 199,143 invalid for obviousness under 35 U.S.C. § 103, pursuant to that prayer of the counterclaim of Walter Kidde Company, appellant.

Copy of Daum Patent in Suit, Des. 199,143     PX 100

# United States Patent Office

Des. 199,143
Patented Sept. 15, 1964

199,143
LIGHTING FIXTURE
Howard A. Daum, Hanover, Pa.
(P.O. Box 128, Littlestown, Pa.)
Filed Apr. 25, 1963, Ser. No. 74,610
Term of patent 14 years
(Cl. D48—31)

FIG. 1

FIG. 2

FIG. 1 is a front elevation of a lighting fixture showing my new design with the standard broken away in part to indicate indeterminate length.

FIG. 2 is a top plan view thereof.

The dominant features of my design reside in the full line portions of the drawings.

The undisclosed rear is the same in appearance as the front shown in FIG. 1.

I claim:

The ornamental design for a lighting fixture, substantially as shown and described.

[A5964]

References Cited by the Examiner
UNITED STATES PATENTS
D–77,196    12/28    Underwood ------------ D–48/31
OTHER REFERENCES

Meierjohan Wengler Ornamental Lighting Fixtures and Lanterns Catalog, received Nov. 20, 1953, page 4, top center of page, item No. 1605, lantern.

Meierjohan Wengler Ornamental Lighting Fixtures and Lanterns Catalog, received Nov. 20, 1953, page 5, right center of page, item No. 10576, lantern.

WALLACE R. BURKE, *Acting Primary Examiner.*

---

52. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 272, 93 L.Ed. 235 (1949).